[No. A030507. First Dist., Div. Four. Aug. 26, 1985.]

In re ALFONSO REINA et al., on Habeas Corpus.

## COUNSEL

Donald Specter, under appointment by the Court of Appeal, and Constance I. Bakkerud for Petitioners.

John K. Van de Kamp, Attorney General, John Herbert and Joyce E. Hee, Deputy Attorneys General, for Respondent.

## OPINION

**SABRAW, J.**—Petitioners Alfonso Reina and Ronnie Esparza seek credits against their sentence on a basis of one day credit for one day served during a period in which they were assigned to a segregation unit in San Quentin Prison. We conclude that they were entitled to the credit they seek because their assignment to the segregation unit was a result of a nonadverse transfer from an institution where they were earning credit at the level of one day credit for one day served (hereinafter referred to as one-for-one credit).

Before their transfer to San Quentin, petitioners were incarcerated at Deuel Vocational Institution (DVI) where they were housed in L wing which was a segregated housing unit for members and affiliates of the Neustra Familia prison gang. Due to the physical arrangement of the L wing facilities, it was possible to conduct a textile industry work program within the facilities and eligible inmates, including petitioners, were able to earn one-for-one credits by participating in the program. (*Ibid.*) Upon their transfer to San Quentin and pending review for appropriate housing, petitioners were initially placed in administration segregation, due to the information from DVI of involvement in the prison gang Neustra Familia. In May 1984, petitioners appeared before the classification committee at San Quentin. In both cases, the committee concluded that petitioners would not be compatible at that time with the general population at San Quentin and should be retained in segregated housing in the management control unit (MCI) but referred for housing in the general population of another institution. From the time petitioners were transferred to San Quentin they no longer were

given one-for-one credits because no work program was available for inmates segregated from the general population at San Quentin.

On July 24, 1984, the prison law office wrote to the legal affairs coordinator at San Quentin stating that approximately 40 Hispanic prisoners had been transferred from DVI to San Quentin and because they had been placed in segregation had been denied one-for-one credits. The prison law office made two primary points. First, they stated that they had been informed that the prisoners had been transferred because of demand placed on prison officials due to a preliminary injunction issued by a United States District Court regarding the criteria which must be met to retain inmates in segregation. Second, they contended that the reduction in credits was a violation of the Department of Corrections Classification Manual, section 310 subdivision (i), which states that prisoners shall not be penalized by being placed in a lower earning category as a result of a nonadverse transfer. The prison law office also stated that two of these prisoners had attempted to seek relief through administrative procedures but their requests had either been denied or ignored. The prison law office also wrote to the Director of the Department of Corrections raising the same points and requesting an investigation. The legal affairs coordinator responded that the Hispanic prisoners had been segregated at DVI because they were members or associates of the Nuestra Familia and, because DVI had segregated them for this reason, San Quentin concluded they would not be suitable for placement in the general population. The answer on behalf of the director pointed out that an effort would be made to find some place to house these inmates where they could be isolated from the general population and still work but that as yet such facilities were not available. It was suggested that the inmates continue to pursue their cases through the appeals process.

In November of 1984, petitioners represented by the prison law office filed a petition for writ of habeas corpus in the Marin County Superior Court to challenge the reduction of credits. An order to show cause issued and the Attorney General representing the warden of San Quentin took the position that reducing credits in this situation was not improper. On December 18, 1984, the superior court ruled on the petition. The court held that regardless of whether the transfer to San Quentin was because of the federal decision or because of the need for additional housing for general population inmates at DVI as the Attorney General contended, the initial transfer was for a "nonadverse" reason and section 310 subdivision (i) required that petitioners receive the one-for-one credits they had been earning at DVI. However, the court concluded that when the classification committee at San Quentin assigned petitioners to segregated housing, there was an "adverse movement" sufficient to terminate the benefits of section 310 subdivision (i).

Because the petitioners had not exhausted their administrative remedies, the petition was denied.

The instant petition was filed on February 4, 1985. An order to show cause issued and return was filed on July 15, 1985. A traverse was filed on July 19, 1985.

We first note that this petition is not moot because petitioners have been released on parole since the filing of the petition. Any credits to which they are entitled may reduce their parole periods. (*In re Ballard* (1981) 115 Cal.App.3d 647, 650 [171 Cal.Rptr. 459]; see *In re Sosa* (1980) 102 Cal.App.3d 1002 [162 Cal.Rptr. 646].)

■ The Attorney General, however, urges this court not to reach the merits because petitioners have not exhausted their administrative remedies. The Attorney General is correct in pointing out that generally prisoners must exhaust administrative remedies before seeking a writ of habeas corpus. (*In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) An exception is made to the exhaustion requirement where the aggrieved party can positively state what the administrative agency's decision in his particular case would be. (*Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761]; *In re Dexter* (1979) 25 Cal.3d 921, 923 [160 Cal.Rptr. 118, 603 P.2d 35].) Petitioners rely on this exception and, as evidence, point to the response of the Legal Affairs Coordinator and the Director of the Department of Corrections to a protest to the segregation of the inmates transferred from DVI to San Quentin and the reduction of their work credits. Although the director suggested that the inmates pursue their individual appeals, it was clear from the entire letter that the director was referring to the possibility of individual decision as to the placement in segregation. If they were properly placed in segregation, however, it is also clear that the policy of the department was to not give one-for-one credit since no work program was available. This policy has been maintained by the department in their return to the order to show cause in the superior court and in its opposition to the petition before this court. Since the position of the department is clear and since the issue is one of law and likely to recur, we address the issue presented.

■ Petitioners contend that the reduction of their credits after transfer to San Quentin violated a regulation of the California Department of Corrections (CDC) which provides in relevant part that "Inmates shall not be penalized by being placed in a lower earning category as the result of an intra and/or inter-institutional transfer due to a lowering of his/her classification score *or other non-adverse movement.*" (CDC Classification Manual, § 310, subd. (i), italics added.) It is undisputed that petitioners were

placed in a lower earning category when they were transferred from DVI to San Quentin and it is clear that the movement was nonadverse since it did not result from any action by petitioners. Nor does the Attorney General contend otherwise. Rather the Attorney General argues that application of section 310 subdivision (i) to petitioners would be inconsistent with Penal Code section 2933.

Penal Code section 2933 is a part of a substantial revision of the scheme by which prisoners earn and forfeit conduct credits which was effective January 1, 1983. Prior to that date, a state prisoner could reduce his term of confinement by only one-third by earning credits for good behavior and program participation, referred to collectively as "conduct credits." (See former Pen. Code, § 2931; see *People* v. *Sage* (1980) 26 Cal.3d 498, 501 [165 Cal.Rptr. 280, 611 P.2d 874].) Prisoners may now earn additional credits by participating in a "credit qualifying program." (§ 2933, subd. (a).) These are the one-for-one credits with which this case is concerned. The Attorney General contends that awarding petitioners credit for work they have not performed is inconsistent with section 2933. They point particularly to subdivision (b) which provides: "Worktime credit is a privilege, not a right. *Worktime credit must be earned* and may be forfeited pursuant to the provisions of Section 2932. Except as provided in subdivision (a) of Section 2932, every prisoner shall have a reasonable opportunity to participate in a full-time credit qualifying assignment in a manner consistent with institutional security and available resources." (Italics added.)

Although the Attorney General does not attack subdivision (i) itself as inconsistent with section 2933 but only attacks its application to petitioners, it appears that any application of subdivision (i) would offend section 2933 in the same way, i.e., by providing credits not actually earned. We first consider, therefore, whether the subdivision itself is inconsistent with section 2933.

Subdivision (i) as a part of the classification manual was formulated on the authority of the Director of Corrections as established in the California Penal Code. (CDC Classification Manual, § 101.) Penal Code section 5058, subdivision (a) provides that "The director [of corrections] may prescribe and amend rules and regulations for the administration of the prisons. Such rules and regulations shall be promulgated and filed pursuant to Chapter 4.5 (commencing with Section 11371) of Part 1 of Division 3 of Title 2 [now Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2] of the Government Code, and shall, to the extent practical, be stated in language that is easily understood by the general public." Section 11342.2 of the Government Code articulates the basic limitation on the rulemaking function of administrative agencies: "Whenever by the express

or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute.''

Penal Code section 2933 does not specifically authorize the CDC to grant one-for-one credits when no qualified program is available to a prisoner nor does it forbid it. It is clear, however, that allowance of credits in such a situation is not inconsistent with the statute merely because it allows a prisoner to receive credits even though that prisoner does no work. Section 2933 provides that: "Except as provided in subdivision (a) of Section 2932, every prisoner willing to participate in a full-time credit qualifying assignment but who is either not assigned to a full-time assignment or is assigned to a program for less than full time, *shall receive no less credit* than is provided under Section 2931." (Italics added.) The wording "no less credit" does not exclude the possibility of "more credit" than that provided under section 2931. It appears, therefore, that subdivision (i) is not inconsistent with section 2933. But is it "reasonably necessary to effectuate the purpose of the statute?" In answering that question, courts " 'defer to the agency's expertise and will not "superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision." ' " (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 355 [185 Cal.Rptr. 453, 650 P.2d 328].) The purpose of the statute is to provide incentive for inmates to participate in one of the educational or work programs designed to develop job skills and work ethics. Subdivision (i) is clearly intended to prevent unfairness to prisoners transferred for administrative reasons over which they have no control.[1] It would not be unreasonable to conclude that the incentive to rehabilitate oneself would be increased by the perception that fairness exists in the operation of the rehabilitation program.

We conclude that subdivision (i) is a valid regulation and that petitioners having been transferred from DVI to San Quentin for administrative reasons not within their control are within that regulation.[2]

---

[1]Subdivision (j) of the section also directs that inmates "shall not be penalized by being placed in a lower credit earning category as a result of a lockdown or recall situation in which they have no control. They shall continue to earn credits at the same rate as they were assigned prior to the lockdown situation."

[2]Respondents continue to maintain that the transfer from DVI to San Quentin was to provide additional housing at DVI for general population inmates. Petitioners continue to maintain the transfer was the result of criteria set forth in a federal injunction. It is unnecessary to resolve this dispute since either reason for transfer would result in "nonadverse movement" within the meaning of subdivision (i).

■ The superior court in ruling on the petition for habeas corpus in that court also concluded that the transfer was "a nonadverse movement" within subdivision (i). That court, however, concluded that the placement of petitioners in a management control unit was an adverse movement sufficient to terminate the benefits of subdivision (i). We cannot agree.

When inmates are transferred from one prison to another, the receiving prison must decide where the inmate is to be housed. If that initial placement can invariably be considered a transfer, subdivision (i) would be vitiated. The protection of subdivision (i) could never protect an inmate beyond the short period it takes the receiving prison to decide on appropriate placement. Of course, if during this period, the inmate behaves so as to subject himself to disciplinary action, the placement in a lower earning category which might ensue, would be due to the disciplinary action and not to the transfer and subdivision (i) would not apply. Here, however, both petitioners were placed in segregated housing solely on the basis of information received from DVI which convinced the classification committee at San Quentin that petitioners should be segregated from the general population. The placement was a result of the transfer from DVI which was a nonadverse movement.

Respondent Director of Corrections is ordered to amend petitioners' release dates to reflect one-for-one credits during the period in which petitioners were incarcerated in San Quentin Prison.

Poché, Acting P. J., and Channell, J., concurred.