[No. A037819. First Dist., Div. Five. Mar. 4, 1988.]

In re RICHARD CARTER on Habeas Corpus.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Paul D. Gifford, Michael Buzzell and Catherine A. McBrien, Deputy Attorneys General, for Appellant.

Steven Fama, under appointment by the Court of Appeal, and Donald Specter for Respondent.

## OPINION

**LOW, P. J.**—In this matter, we are asked to decide if an inmate is entitled to receive one-for-one worktime credits (Pen. Code, § 2933) when he has been assigned a credit qualifying job but through no fault of his own has not been able to start work. We conclude that he is entitled to those credits he could have earned but was prevented from doing so by administrative delay.

Richard Carter was serving a sentence of two years and eight months at San Quentin prison for grand theft auto (Pen. Code, § 487, subd. 3) and grand theft (Pen. Code, § 487, subd. 1). He was made eligible for the work/training incentive program (Cal. Code Regs., tit. 15, § 3044),[1] and on March 6, 1986, was assigned to a credit qualifying job. From that period until April 16, 1986, he was willing and able to work, but the correction authorities did not let him report because they were waiting for a photograph of him, presumably to be used for a work pass. He began work on April 16 and is presently on parole.[2] Before he was paroled, he requested administrative review of his credits. The warden granted only a portion of the credits he claimed. █ Carter's release on parole does not render this matter moot since any credits to which he was entitled may reduce his parole period. (*In re Reina* (1985) 171 Cal.App.3d 638, 642 [217 Cal.Rptr. 535]; *In re Ballard* (1981) 115 Cal.App.3d 647, 650 [171 Cal.Rptr. 459].)

Carter filed his habeas corpus petition, arguing that he qualified for "S" time credits as provided in California Department of Corrections Classification Manual, chapter 800, section 824, subdivision (e)(8) and California Department of Corrections Administrative Bulletin 86/30, and that to deny him worktime credits violated his right to equal protection. "S" time credit is provided for circumstances which are deemed beyond the inmate's control, such as: "(A) Institutional lockdown. (B) Emergency recall. (C) Attorney visits with inmate clients. (D) Temporary administrative segregation for which the inmate is held not responsible by disciplinary or classification hearing processes. (E) Fog or extreme weather conditions. (F) Work/training supervisor's absence when no relief is provided. (G) Out-to-court as a witness for a period not to exceed 15 working days. . . ." (Cal. Dept. of Corrections, Admin. Bulletin 86/30.)

The trial court granted the habeas petition, and awarded Carter full worktime credits from March 6 on the ground that he could not participate through no fault of his own. The People appeal.

---

[1] Hereafter all section references are to title 15 of the California Code of Regulations unless otherwise indicated.

[2] The record does not indicate when Carter was paroled.

In support of its argument, the People cite *In re Smith* (1986) 178 Cal.App.3d 32 [223 Cal.Rptr. 478] and *In re Vargas* (1985) 172 Cal.App.3d 316 [218 Cal.Rptr. 225]. The People's reliance is misplaced. In *In re Vargas,* the inmate sought worktime credit for volunteer work performed at the Vacaville reception center. The issue decided was whether that job was considered to be a "credit qualifying program" within the meaning of Penal Code section 2933. The reviewing court found that administrative regulations designated such inmates as "involuntarily unassigned" and thus unable to earn worktime credits. (172 Cal.App.3d at p. 321.) Unlike the inmate in *Vargas,* there is no question that Carter was classified as group A-1, making him eligible to receive one-for-one credits. Also, there is no dispute that the job he was scheduled to perform qualified him for one-for-one credits. For these reasons, *Vargas* is irrelevant to our discussion.

■ In *In re Smith,* also cited by the People, an inmate was receiving worktime credits while in the state prison at Tehachapi. Pursuant to his request, he was transferred to Alameda County jail to resolve charges pending against him there. He was held there almost five months and requested one-for-one worktime credits for that period. The trial court awarded him relief. The reviewing court reversed the lower court order, and in so doing rejected defendant's contention that denial of credits penalizes his right to a speedy trial and denies him equal protection of the law. The court concluded that when defendant does not participate he is not entitled to credits. The court reasoned that the purpose behind the statute, to provide the inmate with a marketable skill and to instill in him a work ethic, can only be furthered if the inmate actually participates in the program. "When defendant does not participate, for whatever reason, he is not being punished; rather he is simply not being rewarded." (178 Cal.App.3d at p. 34.)

We find this analysis wanting in its generality. The court made no reference to the administrative regulation which expressly provides the inmate with worktime credits although the inmate is unable to participate in the program through no fault of his own. The California Department of Corrections Classification Manual, chapter 800, section 824, subdivision (e)(8) (adopted Dec. 27, 1985) lists 11 circumstances where worktime credits may still be earned if the inmate is unable to participate in the program due to administrative purposes beyond the inmate's control. (See also Cal. Dept. of Corrections, Admin. Bulletin 86/30.) Section 3045.1, also in effect at that time, lists 20 such instances for which an inmate may earn "S" time credits even though he has been unable to work. Contrary to the broad rule in *Smith,* under certain circumstances participation is *not* required.

■ Whether the administrative delay preventing Carter from participating in his work program also qualifies for "S" time credits must be

determined in the light of the intent behind these rules. We turn first to the language of the rules and regulations themselves. In doing so, we attempt to harmonize each section or rule within the regulatory framework as a whole. (See *Cal. Drive-In Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028]; *Guardians of Turlock's Integrity* v. *Turlock City Council* (1983) 149 Cal.App.3d 584, 595-596 [197 Cal.Rptr. 303].) The purpose is not to punish or to deprive an inmate of worktime credits he was prevented from earning because of administrative necessity beyond his control. Although not specifically mentioned in any of these regulations, the specific delay in providing Carter with a gate pass falls within that category of administrative delays entitling the inmate to "S" time credits. The fault for the delay lies with the prison administration, for it should not take 41 days to get a photograph of the inmate. This delay is similar in effect to that occasioned by (1) an institutional lockdown; (2) emergency recall; (3) administrative segregation for disciplinary purposes for which the inmate is found not guilty; (4) work/training supervisor's absence; and (5) delay in reporting to work/training assignment because of delayed meal schedule, unlocks, and clearing of the institutional count, all of which are excused absences. (§ 3045.1, subd. (b).)

The policy behind the work/training incentive program is "to instill good work habits, teach marketable skills, improve [inmates'] reintegration into society and seek self-sufficiency for the prisons." (Cal. Dept. of Corrections Classification Manual, ch. 800, § 801, subd. (b).) This policy is not furthered by denying Carter worktime credits because he did not have a pass, any more than if he were prevented from working because of inclement weather or some other administrative necessity, circumstances for which he would be entitled to credits. Also, the regulations recognize that an inmate should not lose other privileges associated with his group A-1 classification simply because he is unable to participate in the work/training program. Section 3044 specifically provides: "An inmate diagnosed by a physician and/or psychiatrist as totally disabled and therefore incapable of performing a work/training assignment . . . will remain in group A throughout the duration of their total disability." (Subd. (b)(1)(D).)

In a related section concerning participation credits pursuant to Penal Code section 2931, the California Code of Regulations expressly provides that "(c) Failure to work or participate in program activities for reasons which are beyond the inmate's control shall not be cause for denial or forfeiture of participation credit. Such circumstances may include but are not limited to: . . . [¶] (5) The inmate is restricted from reporting to or participating in an assigned work or program activity by an order or action of institution staff." (§ 3043.2.)

The rationale behind work/training incentive programs, i.e., " 'to instill marketable skills and good work habits in prisoners' " (*In re Smith, supra,* 178 Cal.App.3d at p. 34), is no less valid when applied to participation credits. Moreover, there is nothing in the regulations requiring the inmate to have already participated in the work program before he may get "S" time credits under the enumerated circumstances. Accordingly, we see no reason to draw a distinction between these regulations which excuse absences occasioned by administrative necessity and the instant circumstances which also prevented him from earning the worktime credits. (Cf. *id.,* at pp. 34-35.)

*In re Reina, supra,* 171 Cal.App.3d 638, is persuasive on this point. There, an inmate was transferred to San Quentin from the Deuel Vocational Institute where he was earning worktime credits. The inmates, members of the Nuestra Familia prison gang, were housed in segregated units but still participated in the work/training program. The transfer was done for "nonadverse" purposes, i.e, to provide additional housing at the Deuel facility for general population prisoners. Petitioners relied on former section 310, subdivision (i) of the California Department of Corrections Classification Manual, which provided that the inmate shall not be penalized by being placed in a lower credit earning category when the transfer is due to a nonadverse movement. (*Id.,* at pp. 642-643.) At San Quentin the inmates were kept in segregated housing, but were not given one-for-one credits because no work program was available to inmates segregated from the general population.

The court concluded that the inmates were entitled to receive full worktime credits even though San Quentin did not provide a program for them. The court rejected the same argument made here, i.e., that work must be done in order to earn credit. (*Id.,* at p. 644.) The court reasoned that the incentive for rehabilitation behind Penal Code section 2933 is also advanced by the appearance of fairness when the inmate is prevented from earning credits because of a transfer beyond his control. (*Ibid.*; see new § 3043.6, subd. (a)(2), filed Aug. 7, 1987.)

As in *Reina,* the failure here to get a photograph of Carter was beyond the inmate's control. This delay can be reasonably said to come within the administrative purpose, reflected throughout the rules, of not penalizing an inmate for absences caused by the prison administration. We conclude that Carter was entitled to "S" time credits for that period he was assigned to a work program but was prevented from participating therein. ▪ In making this determination, we are mindful of the general rule requiring the courts to defer to the agency's expertise. (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 355 [185 Cal.Rptr. 453, 650 P.2d

328].) However, where the agency's interpretation of the regulation is clearly arbitrary or capricious or has no reasonable basis, courts should not hesitate to reject it. (See generally, *Wheeler* v. *Board of Administration* (1979) 25 Cal.3d 600, 605 [159 Cal.Rptr. 336, 601 P.2d 568]; *Canteen Corp.* v. *State Bd. of Equalization* (1985) 174 Cal.App.3d 952, 960 [220 Cal.Rptr. 306].)

 We conclude there is no justification to deny Carter "S" time credits under the instant circumstances. The policy behind the work/training incentive program is not thwarted by allowing the inmate to receive one-for-one credits even though he had not yet begun to work, especially in light of the numerous other instances which allow worktime credits despite nonparticipation.

The order of the superior court granting the habeas corpus petition is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied March 28, 1988, and respondent's petition for review by the Supreme Court was denied June 9, 1988. Lucas, C. J., and Panelli, J., were of the opinion that the petition should be granted.