[No. A045999. First Dist., Div. Four. Sept. 28, 1989.]

In re WILLIS RANDOLPH et al. on Habeas Corpus.

COUNSEL

Steven Fama for Petitioners.

John K. Van de Kamp, Attorney General, and John G. Donhoff, Jr., Deputy Attorney General, for Respondent.

OPINION

**PERLEY, J.**—These two petitioners—one in prison and one now on parole—challenge the refusal to retroactively apply a change in the amount of work or participation credits accorded to prisoners who are out-to-court. We conclude that the petitioners should have been given one-for-one credits during the periods in which they were out-to-court. The basis for our conclusion is that the equal protection provisions of the United States and California Constitutions mandate that the rule be applied to give the credits to petitioners.

### CDC RULES REGARDING "S" TIME CREDITS

Under its rules to implement Penal Code section 2933 authorizing one-for-one credits, the California Department of Corrections (CDC) provides a classification of credit designated as "S" time. (Cal. Code Regs., tit. 15, § 3045.1.[1]) "S" time credit is provided for situations when a prisoner cannot work because of circumstances which are deemed beyond the inmate's control. (*In re Carter* (1988) 199 Cal.App.3d 271, 273 [244 Cal.Rptr. 648].) Under this classification, a prisoner receives the sentence-reducing credit that he would have earned if he had been able to work. Section 3045.1 lists 20 specific circumstances under which "S" time is authorized, including such things as institutional lockdowns, attorney visits, administrative segregation for which the inmate is held not responsible, fog or inclement weather conditions. Since October 26, 1988, the list has included the entire period

---

[1] Unless otherwise indicated, all further section references are to title 15 of the California Code of Regulations.

in which the prisoner has been out-to-court. (§ 3045.1, subd. (b)(7).) Prior to that date, prisoners out-to-court *as witnesses* were limited to 15 working days of "S" credit. (Former § 3045.1, subd. (b)(7)) and prisoners out-to-court *as defendants* were allowed no "S" credits but could use excused time off. (Former § 3045, subd. (e)(3).)

The change in the rules for out-to-court periods was accepted after comments that the existing rules were arbitrary and a denial of equal protection. The rule change is being applied prospectively only.[2]

## FACTS AND PROCEDURAL HISTORY

Petitioner Randolph was earning one-for-one credits on December 15, 1987, when he was removed from San Quentin to Fresno County to stand trial on criminal charges. Pursuant to the rules then in effect, petitioner's earning status became one-for-two on January 3, 1988, after he had used up his earned time off, meaning he earned credit at the rate of one day for each two days served. He remained out-to-court until paroled on January 26, 1989.

Petitioner Webb was also earning one-for-one credits on June 3, 1987, when he went out-to-court in San Bernardino County for resentencing as a result of a decision on an appeal. He returned to San Quentin on October 14, 1987, and resumed work on October 16, 1987. He applied to the CDC for one-for-one credits during the period he was out-to-court but his appeal was ultimately denied on the ground that the rule change would not be applied retroactively.

Before applying for relief to this court both Randolph and Webb sought relief by petition for writ of habeas corpus in Marin County Superior Court.

## DISCUSSION

■ Petitioners rely on the Supreme Court's decision in *In re Kapperman* (1974) 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657], to support their argument that the guaranties of equal protection embodied in the Constitutions of the United States and California prohibit the limitation of the change in credit to prisoners going out-to-court after October 26, 1988, the date of the rule change. In *Kapperman,* the Supreme Court reviewed the

---

[2]The People deny that the CDC ever conceded that the pre-October 26, 1988, "S" time regulation violated the equal protection clause. According to the People, the CDC agreed to change the regulation but did not agree that its previous regulation suffered from the constitutional infirmity suggested by the public comment to which it was responding. Nothing in the record before us contradicts this interpretation.

validity of a prospective application of section 2900.5 of the Penal Code which granted presentence credit to prisoners delivered into custody after the effective date of this section. It concluded that "this limitation violates article I, sections 11 and 21, of the California Constitution and the equal protection clause of the Fourteenth Amendment in that it constitutes a legislative classification which is not reasonably related to a legitimate public purpose." (*Id.*, at p. 545.)

The rationale of *Kapperman* was followed by this court's opinion in *In re Reina* (1985) 171 Cal.App.3d 638 [217 Cal.Rptr. 535], although we did not explicitly base our decision on constitutional grounds. In *Reina,* two inmates who were segregated from the general population were transferred from an institution, where they were earning worktime credits, to San Quentin where no work program was available for them. Petitioners relied on former section 310, subdivision (i) of the California Department of Corrections Classification Manual, which provided that an inmate shall not be penalized by being placed in a lower credit earning category when the transfer is due to a nonadverse movement. (*Id.* at pp. 642-643.) This court concluded that the inmates were entitled to receive full worktime credits since the transfer had been a nonadverse movement.

*Reina* was heavily relied on in the case of *In re Carter, supra,* 199 Cal.App.3d 271, 276, wherein an order of the warden of San Quentin denying one-for-one credits to a prisoner, while the authorities waited for a photograph of him, was overturned on equal protection grounds. Presumably, the photograph was to be used for a work pass.

The classifications involved in the instant case are between prisoners who were out-to-court before October 26, 1988, and prisoners who after that date were out-to-court or could not work for other reasons recognized as being beyond their control. Under the above cases we can discern no rational basis for distinguishing between these categories of prisoners.

The People argue that the threshold element of any equal protection challenge has not been met herein since no classification has been made to petitioners' disadvantage. They argue that there is only one class of inmates to whom both the new and old regulations apply—all inmates. Petitioners are treated as are all inmates—their out-to-court time prior to October 26, 1988, will be under the old rules and any out-to-court time they spend after October 26, 1988, will be under the new rules. The People liken this situation to that which occurred when the Legislature changed the credit structure to allow one-for-one credits for work after the effective date of the legislation. The prospective application of this change was upheld in *In re Bender* (1983) 149 Cal.App.3d 380 [196 Cal.Rptr. 801].

The court in *Bender* recognized that if a classification was made solely on the basis of the date the prisoners were delivered to the department, the classification would be impermissible under *Kapperman*. (*In re Bender, supra,* 149 Cal.App.3d at p. 386.) The court looked to the purpose of changing the awarding of credits from the passive award for good behavior afforded by the former scheme to the participation of work credits under the new scheme. "[T]he distinction between the classes is not merely date of delivery to the Department, but reflects instead a subtle but distinct change in the philosophy of earning credits." (*Id.* at p. 387.) Furthermore, reasoned the *Bender* court, even assuming the two groups of prisoners are similarly situated, the classification made by the Legislature satisfied the appropriate standard of review. There was a rational basis for distinguishing between the two groups of prisoners. "The legislative purpose in changing from two-thirds good time and one-third work credits to only work credits was to motivate participation in work programs. [Citation.] As stated in *Stinnette*, '[r]eason dictates it is impossible to influence behavior after it has occurred' (*In re Stinnette,* [1979], 94 Cal.App.3d [800] at p. 806 [155 Cal.Rptr. 912]); furthermore, prospective application of section 2933 is entirely fair to Bender, who received the benefit of his expectation of one-third work credits for the work he performed prior to January 1, 1983. Indeed, retroactive application of the section would be unfair to those convicted persons who did not work, but might have, had they expected a six-month sentence reduction for six months of work performed." (*Id.,* at pp. 389-390.)

The People also rely on *In re Smith* (1986) 178 Cal.App.3d 32 [223 Cal.Rptr. 478], as a case exactly on point. In *Smith* a prisoner was receiving one-for-one credit when he was transferred to Alameda County jail to be prosecuted on an unrelated charge. During the time he was out-to-court, he was receiving one-for-two credits and claimed a denial of equal protection. The reviewing court rejected his argument.

However, in *In re Carter, supra,* the court found the *Smith* analysis of equal protection "wanting in its generality." (*In re Carter, supra,* 199 Cal.App.3d at p. 274.) The court pointed out that the *Smith* court reasoned that the purposes of one-for-one credits could not be served unless a prisoner actually participated in the program. However, the *Smith* court made no reference to the regulation allowing many categories of inmates to earn "S" time credits even though unable to work. In agreement with the *Carter* court, we find the *Smith* analysis of equal protection inadequate since it ignored the fact that the CDC rules treat similarly situated groups differently. Further, the *Carter* court found our reasoning in *In re Reina, supra,* 171 Cal.App.3d 638, to be persuasive. In *Reina* we rejected the argument that work must be done in order to earn credit and reasoned that the incentive for rehabilitation behind Penal Code section 2933 was ad-

vanced by the appearance of fairness when the inmate is not prevented from earning credits by a transfer beyond his control. (*Id.,* at p. 644.) Thus, the *Smith/Bender* analysis, which seems to tie credits to actual labor, is faulty.

The People additionally contend that the prospective application of the rule change is justified by the state's legitimate interest in avoiding unnecessary burdens upon the administration of justice. As did the court in *Kapperman,* we conclude that "the burdens predicted by the People appear illusory." (*In re Kapperman, supra,* 11 Cal.3d at p. 549, fn. omitted.)

The People point out that there are approximately 80,000 prison inmates, with another 60,000 on parole, and suggest that the central files of each inmate and parolee would need to be searched to determine if the amended regulation would have an impact on the inmate's release or parole discharge dates. We cannot accept that this is the only means by which the CDC could implement retroactive application of the rule change. We note that in implementing the rule change itself, the department distributed an administrative bulletin stating that inmates returned from court after the effective date of the regulation could submit a written request for application of appropriate "S" time credit. The bulletin directed that the change should be called to the attention of affected persons by posting, making copies available for review by segregated inmates who do not have access to posted copies and by distributing copies to inmate law libraries and inmate advisory councils. We see no reason why this would not be an adequate means of implementing a retroactive application of the change. As to parolees, they are in regular contact with their parole officers who could also be informed of the change.

Respondent Director of the California Department of Corrections is ordered to amend petitioner Webb's release date to reflect one-for-one credits during the period in which petitioner was out-to-court and to recalculate petitioner Randolph's release date and deduct from his parole period any days of incarceration served beyond the recalculated release date.

Anderson, P. J., and Poché, J., concurred.

Petitioner's application for review by the Supreme Court was denied January 4, 1990.