[No. F018021. Fifth Dist. May 28, 1993.]

In re DAVID DEAN RICHARDS on Habeas Corpus.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Kenneth C. Young, Assistant Attorney General, Morris

Lenk, Paul D. Gifford and Peter Siggins, Deputy Attorneys General, for Appellant.

Millard A. Murphy for Respondent.

---

**OPINION**

**ARDAIZ, Acting P. J.**—Respondent, David Dean Richards, was convicted of two counts of first degree burglary, six counts of forcible rape, two counts of attempted forcible sodomy, and two counts of forcible oral copulation. On August 31, 1989, the Los Angeles Superior Court sentenced respondent to a total term of 61 years and 4 months imprisonment. Respondent was given 590 days credit for time actually served.

Respondent entered the state prison system on December 12, 1989. He was rated as a level IV, or maximum security prisoner, due to his high classification score of 79.[1] (See, Cal. Code Regs., tit. 15, §§ 3375 [higher classification score indicates greater security control needs], 3375.1, subd. (a)(4) [score of 79 falls within level IV or highest classification], and 3377 [description of level IV facility].)[2] Consequently, in February of 1990, respondent was transferred to the maximum security facility at Tehachapi.

More than one year later, respondent began to question the manner in which his initial classification score had been determined. On July 26, 1991, respondent initiated an administrative appeal seeking, inter alia, a reduction of his classification score based on his "favorable prior incarceration behavior" while in county jail awaiting trial on the charges which led to his current term of incarceration. The California Correctional Institution Officials at Tehachapi (CCI) denied this request throughout the administrative appellate process based on their position that respondent was not eligible to receive prior incarceration credits for conforming conduct while confined in county jail on the current offense.

On November 19, 1991, respondent filed a petition for writ of habeas corpus in the Kern County Superior Court challenging the computation of his prisoner classification score. Respondent sought a reduction of his

---

[1]Prisoner classification scores play a significant role in determining where, within the state's many prison facilities, a prisoner will be sent to serve his/her term of incarceration. (See Cal. Code Regs., tit. 15, § 3375.1.) As a general rule, a prisoner's classification score is directly proportional to the level of security needed to house the inmate. For example, prisoners with high classification scores will be sent to the prisons with higher levels of security. (See Cal. Code Regs., tit. 15, §§ 3375.1 & 3377.)

[2]All section references are to title 15 of the California Code of Regulations unless otherwise noted.

classification score based on his favorable behavior during the time spent in county jail awaiting trial on the offenses which ultimately led to his imprisonment.

On December 30, 1991, the superior court issued an order to show cause directing the warden at the CCI to file a written return by January 27, 1992. The time to respond was subsequently extended to February 7, 1992.

On January 31, 1992, appellant filed a return that described the manner in which respondent's classification score had been calculated. Included in the return was the California Department of Corrections' (CDC or the Department) interpretation of "prior periods of incarceration" as that term is used in section 3375.3, subdivision(b)(1)(A). Respondent filed a denial and exception to the return on February 18, 1992.

On May 1, 1992, the superior court found that no hearing was necessary and ordered the writ of habeas corpus "to issue directing [the] Department of Corrections to recalculate [respondent's] classification score, including [respondent's] presentence custody time spent in county jail as prior incarceration under *CCR* sec. 3375(b)(1)(A)."[3]

---

[3]The superior court provided the following explanation in support of its conclusion: "Section 3375[b](1)(A) Provides: '(A) Prior incarceration behavior in any correctional agency shall include the last 12 consecutive months in custody, going as far back as necessary to attain a total of 12 months, *prior to completion* of current processing, which includes behavior while in county jail after conviction, during transportation to or processing at the reception center.' (Italics added).

"Although respondent interprets this regulation to exclude precommitment county jail custody time as prior incarceration, the plain language of the regulation states otherwise. The plain language of the regulation specifies that prior incarceration includes custody time up to the completion of current processing, not up to the commencement of current processing or some other point in time.

"The plain meaning of the statute is that all custody time up to the *completion* of processing is to be considered as prior incarceration for the purpose of calculation of an inmate's classification score—such custody time is not cut off by conviction, commitment, delivery to the custody of respondent, or commencement of processing, but ends only upon *completion* of processing.

"It is also the plain meaning of the regulation that 'prior incarceration' means incarceration prior to the completion of current processing—there is no suggestion that precommitment county jail custody time attributable to the commitment offense shall not be included.

"Although as respondent points out, a defendant's presentence custody time in a county jail is ultimately considered as a part of his or her period of incarceration (*Penal Code* Sec. 2900.5), calculation of sentence and calculation of classification score are two different things, and if the state chooses to use a different base for each such calculation, it may do so.

"Here, although the state could easily provide in its regulation that precommitment county jail custody time on the commitment offense shall not be considered as prior incarceration for the purpose of calculating the inmate's classification score, it has not done so. While

Appellant timely filed a notice of appeal on June 8, 1992, seeking relief from the superior court order granting the writ of habeas corpus. CCI did not, however, seek a stay of the superior court's order pending appeal.

On appeal, CCI officials contend the superior court failed to give due deference to the Department's interpretation of its own regulation and instead, substituted its erroneous interpretation of the phrase "prior period of incarceration." According to appellant, this erroneous interpretation led to the improvident grant of the writ of habeas corpus. For the reasons that follow, we reject appellant's contentions.

### DISCUSSION

"[E]ach person who is newly committed to a state prison [shall] be examined and studied. This includes the investigation of all pertinent circumstances of the person's life . . . and the antecedents of the violation of law because of which he or she has been committed to prison." (Pen. Code, § 5068.) Based upon the results of the examination and study, the Director "shall classify prisoners; and when reasonable, . . . shall assign a prisoner to the institution of the appropriate security level . . . nearest the prisoner's home, unless other classification scores make such a placement unreasonable." (*Ibid.*)

To ensure uniform application of the classification process, the director, pursuant to authority vested in him under Penal Code section 5058,[4] has promulgated regulations stating the factors to be considered by the correctional officer responsible for determining an inmate's security classification. (See § 3375 et seq.) ■ The interpretation of one of these regulations, section 3375.3, is the subject of this appeal.

Under section 3375.3, points are to be added to a new prisoner's classification score for, inter alia, unfavorable behavior during prior periods of incarceration. Conversely, if a new prisoner behaved favorably during prior periods of incarceration, section 3375.3 mandates that he/she receive a predesignated reduction in his/her classification score. In the present case, we have been called upon to decide whether appellant properly interpreted the phrase "prior incarceration behavior" contained in subdivision (b)(1)(A) of section 3375.3.

■ "Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and

---

respondent's interpretation of CCR sec. 3375 (B)(1)(A) is entitled to great weight, it is this court's finding that respondent's interpretation is clearly erroneous."

[4]Penal Code section 5058 grants the Director of Corrections authority to "prescribe and amend rules and regulations for the administration of the prisons."

regulations of administrative agencies. ( *Miller* v. *United States* 1935 (294 U.S. 435 . . . .)" ( *Cal. Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028]; see *Union of American Physicians & Dentists* v. *Kizer* (1990) 223 Cal.App.3d 490 [272 Cal.Rptr. 886]; cf., *Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 244 [5 Cal.Rptr.2d 782, 825 P.2d 767] [applying rule of statutory construction to interpretation of administrative regulation].) ■ "[W]e begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of [those promulgating the regulation.] [Citations.] If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856], internal quotations omitted.) ■ With these principles in mind, we turn to the language in dispute.

Section 3375.3, subdivision (b)(1)(A) provides:

"(b) Prior Incarceration Behavior (Boxes 57 through 76x)

"(1) If the inmate has no prior incarcerations of 31 days or more, no points shall be assessed.

"(A) Prior incarceration behavior in any correctional agency shall include the last 12 consecutive months in custody, going as far back as necessary to attain a total of 12 months, prior to the completion of current processing, which includes behavior while in county jail after conviction, during transportation to or processing at the reception center." ( *Ibid.*)

Appellant has interpreted this section in such a manner so as to exclude from consideration a prisoner's behavior while incarcerated in a county jail on the charges that led to the current prison term. Appellant maintains that the superior court was bound to accept this interpretation since it was not clearly erroneous.

■ "[W]hile an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts." ( *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161]; see

e.g., *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].) We are of the opinion that nothing in the language of section 3375.3, subdivision (b)(1)(A) supports appellant's interpretation. Indeed, we believe the language is clear and therefore not subject to interpretation.

Appellant maintains that "prior incarceration" necessarily "excludes a present period of incarceration that simply began in another location, i.e., county jail." Appellant misreads section 3375.3, subdivision (b)(1)(A).

First, the "prior incarceration" referred to in this subdivision includes incarceration in "*any* correctional facility." Thus, the regulation does not differentiate between prison confinement and other types of incarceration. Second, the regulation speaks to both the duration and proximity of the prior period of incarceration. In this regard, subdivision (b)(1)(A) of section 3375.3 directs that the prior incarceration behavior "shall include the last 12 consecutive months in custody . . . prior to the *completion* of the current processing." (*Ibid.*, italics added.) Current processing is said to include "behavior while in county jail after conviction, during transportation to or processing at the reception center." (*Ibid.*) Thus, the 12-month period of incarceration in any correctional facility immediately preceding the completion of a prisoner's current processing at the reception center is to be considered in the classification process.

This interpretation is consistent with the purpose to be served by the classification process, i.e., assigning a prisoner to a facility commensurate with the security needs of the prisoner, fellow inmates, and prison staff. (See § 3375 et seq.) A correlation between past and future incarceration conduct can be inferred from the fact that the Department has included past incarceration behavior as a factor in the classification process. It follows then that behavior during the most recent period of incarceration (assuming it meets the durational requirements of section 3375.3)[5] is a very strong indicator of a new prisoner's future incarceration behavior.

Additional evidence of the Department's intention to include pretrial incarceration behavior can be found by examining other subdivisions of section 3375.3. Subdivision (b)(1)(C) of section 3375.3 provides that where "the inmate has a prior incarceration but adequate documentation of the inmate's behavior is not available, points shall be assessed in accordance with subsection (4) . . . ." The relevant portions of section 3375.3, subdivision (b)(4) provide:

---

[5]Appellant insists that disparate treatment would result between prisoners with pretrial detention periods of less than 12 months and those with periods greater than 12 months. We need not decide this issue since appellant spent 590 actual days in custody in the county jail.

"(4) If documentation of the inmate's prior incarceration behavior of 31 days or more is inadequate to assess points or credits in subsections (2) [for unfavorable prior behavior] or (3) [for favorable prior behavior] above:

"(A) Four points shall be entered in Box 76x for each incarceration in any facility listed below . . . .

"1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"2. Local adult . . . detention facility.

"(B). . . . . . . . . . . . . . . . . . . . . . . . . .

"(C) *Exclude pretrial detention unless* the inmate was given credit for the time against actual sentence of 31 days or more." (*Ibid.*, italics added.)

If we were to adopt appellant's interpretation of the phrase "prior incarceration behavior," a prisoner's pretrial detention behavior would be excluded from consideration under section 3375.3, subdivision (b)(1)(A) if adequate documentation existed, but *would be* considered under subdivision (b)(4) if adequate documentation was not available and the prisoner, like respondent, was given credit for the time against an actual sentence of 31 days or more. Clearly, the drafters of this regulation could not have intended such disparate results.

In addition, had the drafters of the regulation sought to exclude presentence custody time from consideration under section 3375.3, subdivision (b)(1)(A), they could have easily accomplished that purpose by utilizing language similar to that employed in section 3375.3, subdivision (a)(1)(A). Section 3375.3, subdivision (a)(1)(A) states, in relevant part, that: "Presentence credits . . . shall not be subtracted from length of term . . . [in calculating a new prisoner's classification score]." The fact that they did not do so is further evidence of an intent to consider a new prisoner's behavior during presentence custody.

We, therefore, conclude that the phrase "prior incarceration behavior" as used in section 3375.3, subdivision (b)(1)(A) includes incarceration behavior while in county jail awaiting trail on the charges that led to the current term of incarceration.

Judgment affirmed.

Dibiaso, J., and Buckley, J., concurred.