[No. D047042. Fourth Dist., Div. One. Jan. 11, 2007.]

In re MARCUS W. PLAYER on Habeas Corpus.

**COUNSEL**

John Lanahan, under appointment by the Court of Appeal, for Petitioner.

Bill Lockyer, Attorney General, James M. Humes, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, Jane Catherine Malich, Collette C. Cavalier and Heather Bushman, Deputy Attorneys General, for Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—In this matter, we are called upon to interpret several administrative regulations used by the prison authorities to award work-time behavioral credits/points which affect an inmate's classification score and impact on his custody level and privileges within the prison system. Petitioner Marcus W. Player, who is serving a 31-year-to-life prison term for a 1983 murder/robbery case, has filed a petition for a writ of habeas corpus,

challenging the refusal of respondent Department of Corrections and Rehabilitation (DOCR) to grant him such points under title 15 of the California Code of Regulations,[1] section 3375.4, subdivision (b)(4) for three six-month periods for which his work status classification was interrupted without his fault or for which his work status was reinstated because he had been exonerated of wrongdoing that had removed him from his work status. Player asked this court to order an appropriate reduction of his classification points on his annual reviews (AR's) for 1996, 1997 and 2000, and based on his adjusted classification scores, that he be considered for a custody level reduction. We issued an order to show cause (OSC) and now grant the relief requested, finding the DOCR's interpretation of the "period" considered "continuous" for the reclassification annual review (AR) in subdivision (a) of section 3375.4, which affects the granting of favorable points/credits for "average or above performance" work for qualifying assignments in work and school programs, is unreasonable and unfairly applied in this case.

## BACKGROUND FACTS

In an unpublished opinion filed on April 30, 2004, this court granted Player's petition for habeas corpus relief in case number D041462, which had sought to vacate a March 15, 1996 finding that Player had conspired to assault a member of the prison staff of Calipatria State Prison. Player, who had been in a "credit-qualifying" work assignment before that finding, was placed in administrative segregation on August 16, 1995, sentenced to serve a 12-month term in the SHU (security housing unit) starting in November 1995, and had his work assignment suspended as a result of the finding. He was not reassigned for credit-qualifying work until April 19, 1997, and did not receive any favorable credits/points reduction on his annual reclassification reviews for 1996 or 1997. After he pursued a series of unsuccessful rounds in the administrative appeal arena and superior court, we granted Player's request not only to vacate the finding of guilt for conspiracy to assault prison staff, but also to dismiss the rules violation report (RVR) referring to such incident (RVR, log No. 09-95-D052), to delete any reference to such RVR from Player's central prison file (C-file), to restore 150 days' lost credit to Player, and to redetermine Player's classification status.

During the time Player was challenging the March 1996 finding, he was also involved with administrative review of a decision by the institutional classification committee (ICC) denying him favorable work points for the

---

[1] All section references are to title 15 of the California Code of Regulations unless otherwise specified.

annual classification review period of 1999 through 2000 for which he had suffered a nonadverse transfer, was placed in administrative segregation and then sent to court, all through no fault of his own. His appeal regarding favorable points during that period was denied at the first level even though the unit classification committee (UCC) had granted Player "S"[2] time from his date of arrival at Calipatria until he was rehired and had retained his work status as "A1/A"[3] based on the transfer being nonadverse.

Player's appeal from the first level regarding the 1999 through 2000 period was partially granted at the second level of review by the chief deputy warden at Calipatria. In awarding Player two favorable points, the warden reasoned: "You [Player] were unassigned 12/07/99 due to a non-adverse transfer to CEN [(Centinela)]. You were reassigned on 1/01/00 and unassigned on 3/02/00 due to your placement in Administrative Segregation resulting from an enemy concern. You were then transferred to CAL [(Calipatria)] on 5/17/00. On 6/28/00, you went out to court as a witness to Fresno County and returned to CAL on 7/25/00. The annual review for this time period is 9/20/99 through 9/19/00. [¶] The first six-month period you do qualify for two (2) favorable behavior points for work, due to working satisfactory and that the transfer to CEN was non-adverse in nature. The second six month period for this annual review, you did not qualify for favorable points for work, due to you were unassigned."

On July 30, 2004, the ICC at Calipatria met with Player to recalculate his classification score in compliance with our order in case No. D041462. Before doing so, the ICC reduced Player's classification score by eight points for remaining discipline free and receiving average or above performance reports for the two six-month periods from August 2003 through July 2004. It then vacated the 12-month SHU term assessed in 1995 based on the dismissed RVR, changed Player's work status effective "5/31/96" to "A1/A effective 6/22/95," granted him "S" time from "8/16/95 until 4/19/97," and corrected his placement score to reflect "8 favorable points . . . ."

Based on the grants of "S" time on May 31, 2000, and again on July 30, 2004, Player filed an inmate appeal September 16, 2004, claiming entitlement

---

[2] The DOCR's operations manual (Mar. 2000), referred and cited to as DOM, provides that " 'S' time (security time off) is an authorized absence from an inmate's work/training assignment that is required by the prison administration and/or beyond the inmate's control. [¶] Recorded 'S' time shall be considered the same as time worked for purposes of credit earning." (DOM, § 53130.9.)

[3] A work status of "A1/A" qualifies an inmate for full-time work/training assignment and entitles the inmate to earn appropriate work credits. (See DOM, §§ 53130.5–53130.7.1.)

to four additional favorable work reduction credits on each of his annual reclassification forms or score sheets (CDC form 840) for July 1996, August 1997 and August 2000. On November 8, 2004, his second level of appeal was partially granted. Based on the review of Player's C-file, a correctional counselor discovered that Player should have "received two (2) points for the period of June 1995 to December 1995 covered on CDC 840 dated May 16, 1996 where [his] Annual Review [AR] was held on June 14, 1995 and [he was] assigned on June 22, 1995. [¶] [Player was] placed in Administrative Segregation . . . on August 16, 1995 and should have received 2 points in accordance with [section] 3375.4 when an inmate's status is interrupted during the period due to no fault of the inmate the period shall be considered continuous. However that only applied to the period of June 1995 to December 1995 and does not apply to the AR of July 23, 1996 for the period of December 1995 to June 1996. [¶] On [Player's] August 26, 1997 [AR] that covered the period from September 1996 to September 1997, [he] only received 2 points because [he was] assigned on April 19, 1997 covering the second period of the AR not the first because [he was] A1A unassigned and in accordance with [section] 3375.4[, subdivision] (b)(4)(3),[4] credit shall not be given to inmates who are not participating in a program. [¶] The same applied for the AR held on August 13, 2000 where [Player] received 2 points on a correction . . . due to being unassigned due to no fault of [his own] and the period was reviewed as continuous. However, [Player] did not get credit for the second period because [he was] not assigned during the beginning of the period, and the continuous period per [section] 3375.4 does not apply."

On November 17, 2004, Player filed a director's level appeal of the denial of the additional point reductions in his total classification score. After having received no response to his appeal within 60 working days, Player filed a

---

[4] We presume the correctional counselor meant section 3375.4, subdivision (b)(4)(B) which provided in the original version that "The factors and their related numerical weights used to recalculate an inmate's classification score are: . . . (b) Favorable behavior since last review. The categories below provide credits for six-month intervals. Credits shall be given when an inmate is within 30 days of a six-month interval. For an [AR], two six-month periods may be counted. When an inmate's status is interrupted during the period without inmate fault, the period shall be considered continuous. . . . (4) For each six-month period with an average or above performance in work, school or vocational program, two points shall be entered in Box 52 [of CDC Form 840]. . . . (B) Credits shall not be given to inmates who are not participating in a program (such as an inmate who was unassigned for medical reasons)."

Section 3375.4 was amended in 2002. Subdivision (a)(3)(B) is the current corresponding regulation, which states essentially the same as above. It appears the prison officials, as well as the parties, have referred to and applied the earlier worded regulations in Player's various appeals, including the present habeas corpus petition. Although we refer to those original regulations in setting out the background and arguments, we will note any relevant changes in our discussion.

petition for writ of habeas corpus in the Imperial County Superior Court on March 1, 2005, seeking the additional favorable credits/points. Player also claimed the exhaustion of his administrative remedies was futile and would result in irreparable harm because DOCR had returned his appeal "91 days" after being filed for additional documentation, causing delay in resolving the matter which would reduce his current AR to a lower-custody-level inmate based on his favorable behavior the past year. The court issued an OSC on March 22, 2005.

During the pendency of the superior court petition for writ of habeas corpus, Player's director's level appeal was denied. The decision doing so, filed May 20, 2005, found that Player had "failed to submit the required documentation to warrant an additional placement score reduction. Two six-month periods make up an AR. When an inmate's status is interrupted during one period of review without fault, the AR for that 'one' period shall be considered continuous. Favorable points for two review periods are not covered under the definition of favorable points listed in the [section] 3375.4[, subdivision] (a). Additionally, 'S' time granted by a classification committee for a specific timeframe does not equate to granting an inmate two favorable points for all categories for the AR period. While the institution supports their decision based upon [section] 3375[.4, subdivision] (b)(4)[(B)], the CCR cited herein [sections 3044, 3375, and 3375.4] supports the institution's decision."

The director's level appeal decision further noted that it exhausted "the administrative remedy available to [Player] within [DOCR]." Although Player advised the superior court of this fact in his July 1, 2005 points and authorities filed with his reply to the return to his petition for habeas corpus relief, the court on August 1, 2005, denied the petition for failure to exhaust administrative remedies.

Player filed the instant petition for writ of habeas corpus on August 24, 2005.

## THE PETITION AND PROCEEDINGS IN THIS COURT

In Player's verified petition filed in propria persona, he requested this court order DOCR grant him favorable credits/points for satisfactory work for the two periods of time he was awarded "S" time, i.e., from August 16, 1995, to April 19, 1997, and from March 2, 2000, until he was rehired. Player also requested this court order the DOCR to reduce his classification points and reclassify him so that he can be considered for a decrease in custody from level IV to level III. In support of his petition, Player cited section 3045.3,

subdivision (a), which provides that "S" time is to be considered the same as time worked for purposes of earning credit, and former section 3375.4, subdivision (b)(4)(A), which stated that "[i]nterruptions to higher custody assignments which are not the fault of the inmate, such as an out-of-court or found not guilty of rule violation charge, shall not negate credit."

In the Attorney General's informal response filed October 31, 2005, DOCR argued Player had already been awarded all the favorable work credits to which he is entitled during the times claimed and that this court should defer to the DOCR's interpretation of its regulations to uphold the classification actions it took regarding this matter. DOCR argued that the granting of "S" time does not necessarily entitle an inmate to favorable work-reduction credits on his reclassification form and that credits for each six-month period covered by an AR are contingent on the inmate's holding a credit-qualifying assignment at the beginning of each period.

Player filed a reply November 15, 2005, essentially reiterating his position that the award of "S" time credit was not limited to interruption of a credit-qualifying assignment in a single six-month period for an AR. Based on case law, sections of the DOCR's operations manual and the California Code of Regulations, Player claimed the DOCR's interpretation was unreasonable.

On December 7, 2005, we issued an OSC why the relief Player requested should not be granted. At that same time, we requested Appellate Defenders, Inc., to recommend counsel to represent Player in these proceedings and set a briefing schedule the parties would follow after appointment of counsel. Counsel was appointed for Player on December 20, 2005.

DOCR filed a formal return to the petition on March 7, 2006, admitting Player had exhausted his administrative remedies regarding the issues raised by his petition, and that prison officials had granted Player "S" time from June 22, 1995, until April 1997, which provided him "credit for authorized absences from work, school or vocational assignments, and allow[ed him] to earn sentence reducing credits [he] would have otherwise been permitted to earn had [he] been assigned to a program and not been absent. [Citation.]" DOCR denied Player's allegations he was entitled to be assigned to a program that qualified him for sentence-reducing credits, that he was assigned to a work, school or vocational program for the six-month periods preceding each of his classification reviews conducted on July 23, 1996, August 26, 1997, and August 15, 2000, and that he was entitled to favorable behavior points during those reclassification proceedings for participation in a work,

school or vocational program during those times in which he was not assigned to such programs. In its points and authorities, DOCR argues Player's position for entitlement to favorable work behavior credits/points is based on the mistaken belief that "S" time is the same as "assigned" status and maintains Player is not entitled to relief because he was "unassigned" to any qualifying assignment during the periods for which he claims additional credits/points.

Counsel for Player filed a traverse to the return on April 6, 2006, agreeing Player had exhausted his administrative remedies, that he was unassigned to work, school or a vocational program from August 16, 1995, to April 19, 1997, due to the suspension of his assignment status based on the conspiracy finding for which he was later exonerated in case No. D041462, and that he was subsequently granted "S" time credits for that period. Player alleges he was entitled under section 3043.6, subdivision (c)(2) and section 3375.4, subdivision (a) to " 'favorable points' that would reflect continuous work assignment for all periods for which he was held in administrative segregation [and the SHU] as a result of the 'adverse transfer' based upon a charge for which he was later exonerated" and that he was also entitled under section 3375.4, subdivision (a) to "two 'favorable points' for a work, school, or vocational program that was interrupted by the non-adverse placement in administrative segregation on March 2, 2000."

In his points and authorities, Player's counsel stresses that although Player was not continuously in credit-qualifying assignments during the periods in question, such was due respectively to the conspiracy charge for which he was later exonerated and the nonadverse transfer in 2000. But for Player's being removed from his then qualifying work status and assignment due to such events, his credit-qualifying placement would have continued during the questioned periods. He argues that a reading of the plain language of sections 3043.6, subdivision (c)(2) and 3375.4, subdivision (a) supports a finding that Player is entitled to favorable work points/credits for the "continuous period" of each questioned reclassification AR, containing two periods of six months for the respective AR which was interrupted through no fault of Player. In essence, counsel asserts DOCR's interpretation and application of the pertinent regulations regarding a continuous period for purposes of favorable behavior points, so that it precludes Player from benefiting from such reclassification credit/point for the three periods of time in question, is unfair and violates due process.

## DISCUSSION

■ It is well established that when presented with a petition for a writ of habeas corpus by a person lawfully in custody for the purpose of vindicating his rights while in confinement who has exhausted his available administrative remedies (*In re Arias* (1986) 42 Cal.3d 667, 678 [230 Cal.Rptr. 505, 725 P.2d 664], distinguished on another point in *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 129–130 [105 Cal.Rptr.2d 46, 18 P.3d 1198]), "a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred. [Citation.] To assist the court in determining the petition's sufficiency, the court may request an informal response from the petitioner's custodian or the real party in interest. [Citations.]" (*People v. Romero* (1994) 8 Cal.4th 728, 737 [35 Cal.Rptr.2d 270, 883 P.2d 388] (*Romero*).)

We followed that procedure in this proceeding. After considering the allegations of the petition in light of the informal response filed by DOCR, we determined that Player had stated a prima facie case for relief and issued an OSC. The parties have subsequently filed their respective written return and traverse, with documentary evidence, and other matters of record, which have now framed the issues for our determination. (*Romero, supra*, 8 Cal.4th at pp. 738–740; see also *People v. Duvall* (1995) 9 Cal.4th 464, 476 [37 Cal.Rptr.2d 259, 886 P.2d 1252].) At the time we issued the OSC, we gave the parties time within which to request oral argument on this matter. Neither Player nor DOCR has requested oral argument. We therefore turn to a discussion of the issues properly joined for our review.

■ The crux of Player's petition before this court concerns the interpretation of several administrative regulations used by the prison authorities to award work-time behavioral credits and points which can affect an inmate's classification which in turn impacts on the inmate's custody level and privileges within the prison system. Generally speaking, the director of the DOCR has the statutory obligation to classify every person committed to the state prison following an individualized examination and study in accordance with set regulations. (*In re Wilson* (1988) 202 Cal.App.3d 661, 665 [249 Cal.Rptr. 36] (*Wilson*).) "Prisoner classification scores play a significant role in determining where, within the state's many prison facilities, a prisoner will be sent to serve [his] term of incarceration. [Citation.] As a general rule, a prisoner's classification score is directly proportional to the level of security needed to house the inmate. For example, prisoners with high classification scores will be sent to the prisons with higher levels of security. [Citation.]" (*In re Richards* (1993) 16 Cal.App.4th 93, 95, fn. 1 [19 Cal.Rptr.2d 797]

(*Richards*).) More simply, prison officials use the classification process to evaluate and separate prisoners and to generally determine how a prisoner will serve his time in the system.

■ When a male inmate is first received in the prison system, he is housed at a reception center where his case factors are evaluated (i.e., length of sentence, criminal history, behavior during prior and current terms, including escape history) and a standardized system is used to compute a classification score to determine his initial placement in one of the state's prisons or camps. (See §§ 3375.1–3375.3, subd. (a).) The score is recalculated at least yearly and may determine the necessity of subsequent prison transfers. (§ 3375.4.) The administrators of DOCR have broad authority to decide where to incarcerate or transfer a prisoner in accordance with classification decisions made based on " 'the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. [Citations.]' " (*Wilson, supra*, 202 Cal.App.3d at p. 667; see Pen. Code, §§ 5054, 5068; *In re Scott* (2003) 113 Cal.App.4th 38, 44 [5 Cal.Rptr.3d 887] (*Scott*).)

■ Another component of the DOCR classification process occurs once a prisoner arrives at his assigned institution. At that time, the ICC makes decisions about the prisoner's custody level as well as custody restrictions, programs and work assignments. (§§ 3375, subd. (c), 3376, subds. (c) & (d)(1), 3377.1, subd. (a).) The available programs for work and education vary from prison to prison. Generally, a prisoner does not have a right to any particular assignment or program even though Penal Code section 2933 authorizes worktime credit for prisoners who are participating in qualifying assignments. (*Moody v. Daggett* (1976) 429 U.S. 78, 87, fn. 9 [50 L.Ed.2d 236, 97 S.Ct. 274].)[5] The DOCR, however, must follow its own regulations regarding its programs. (§ 3375; *Scott, supra*, 113 Cal.App.4th at p. 44.) Although we must uphold a DOCR decision regarding classification if it is supported by " 'some evidence' " (*Superintendent v. Hill* (1985) 472 U.S. 445, 454–456 [86 L.Ed.2d 356, 105 S.Ct. 2768]; *Wilson, supra*, 202 Cal.App.3d at pp. 666–667), and afford great deference to an administrative agency's expertise (*In re Carter* (1988) 199 Cal.App.3d 271, 276 [244 Cal.Rptr. 648] (*Carter*)), where its interpretation of a regulation is clearly arbitrary or capricious or has no reasonable basis, we will not hesitate to reject it. (*In re Lusero* (1992) 4 Cal.App.4th 572, 575 [5 Cal.Rtpr.2d 729].)

At issue in this matter are three segments of time where Player was denied two favorable points/credits for average or above-average work performance

---

[5] The 2003–2004 Budget Act (Assem. Bill No. 1765 (2003–2004 Reg. Sess.)) requires the DOCR to provide priority placement in education and work programs to inmates who are eligible for one-for-one worktime credit, but prisoners already in programs are not to be displaced. (See The California State Prisoners Handbook (3d ed.) (2006 supp.) § 3.5, p. 24.)

on his annual classification reviews for December 1995 to June 1996 (the July 23, 1996 AR), September 1996 to March 1997 (the Aug. 26, 1997 AR), and March 2, 2000, until his rehire (the Aug. 15, 2000 AR).[6] Player admittedly was not participating in a qualified work or training assignment at the beginning of each of the challenged six-month periods. It is undisputed, however, that Player was not in such a qualifying assignment and was granted "S" time credits for those periods included within the time frames from August 16, 1995, to April 19, 1997, and from March 2, 2000, until his rehire. It appears to be DOCR's position that even though it is required to award Player appropriate worktime (incentive) credits for those times he was granted "S" time based on fairness under the regulations as interpreted by case law (see *Carter, supra,* 199 Cal.App.3d at pp. 274–277), the same rationale does not apply to the award of "favorable points" for average or above-average performance in work, school or vocational program.

In support of this position, DOCR construes section 3375.4, subdivision (a) as providing a clean slate for each six-month period included in a yearly AR. Player challenges this interpretation based on the plain language of subdivision (a) of section 3375.4 regarding a period being considered continuous when it is interrupted through no fault of the inmate and the interaction of that section with other regulations that specifically state an inmate will not suffer detriment to his credit earning status when he is exonerated from an adverse transfer (§ 3043.6, subd. (c)(2)) or when his status is interrupted during the review period without his fault by a nonadverse transfer (§§ 3043.6, subd. (a), 3375.4, subd. (a)). We are thus called upon to decide whether DOCR's interpretation of the "period" considered "continuous" for the AR in subdivision (a) of section 3375.4, as only the six-month segment of the year that is interrupted for purposes of awarding favorable average or above performance work points/credits, is rational.

In doing so, we note that " 'the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies. [Citation.]' [Citations.] '[W]e begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute

---

[6] The record does not reflect the exact date of Player's rehire in 2000. Nonetheless, during the administrative appeal process Player received two points for the other six-month period of each questioned AR due to having qualified work assignments during that segment of the year interrupted through no fault of his own or by the charge of wrongdoing that was later overturned.

to determine the intent of [those promulgating the regulation.] [Citations.] If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.]' [Citation.]" (*Richards, supra,* 16 Cal.App.4th at pp. 97–98.) With these principles in mind, we turn to the language in dispute.

Section 3375.4, as amended in 2002, sets out the factors and their related numerical weights used to recalculate an inmate's preliminary classification score by explaining what boxes, describing pertinent factors, to fill in on the reclassification form. Subdivision (a) of that section provides, in relevant part, "Favorable behavior since last review (Boxes 46–51). The categories below provide favorable points for six-month intervals. *For an annual reclassification review, two six-month periods may be counted. When an inmate's status is interrupted during the period without inmate fault, the period shall be considered continuous. . . .*[7] [¶] (3) For each six-month period with an average or above performance in work, school, or vocational program, two points shall be entered in Boxes 50–51 [formerly Box 52]. . . . [¶] (B) Favorable points shall not be granted for average or above average performance for inmates who are not assigned to a program." (Italics added.)[8]

■ Based on its interpretation of the language of subdivision (a) of section 3375.4, DOCR calculates favorable points for each six-month period of an AR separately, and if, for any reason, an inmate is not in a credit-qualifying work assignment at the inception of a six-month period in an AR, the DOCR will not grant the inmate points for that segment, claiming "continuous" only refers to the six-month period in which a no-fault interruption occurs regardless of whether that interruption caused the inmate not to be in a qualifying assignment during the other six-month period under review. We believe, however, that the plain language of section 3375.4, subdivision (a), italicized above, refers to the *period* of the review, which, in most cases, is one year, comprised of two six-month periods, and that if such one-year *period* is interrupted through no fault of the inmate, the entire *period* is considered "continuous" for that AR. If a review period is less than one year due to the need of a reclassification because of a disciplinary violation or referral to the UCC or ICC for a program, housing or behavior concern, the period will then normally only include one six-month period since the last review.

---

[7] The earlier version of section 3375.4, subdivision (a) concerned additions of points for unfavorable behavior, with subdivision (b) addressing favorable behavior points in the same language as the current subdivision (a).

[8] The former version of this subdivision was in section 3375.4, subdivision (b)(4)(B), and provided that "[c]redits shall not be given to inmates who are not participating in a program (such as an inmate who was unassigned for medical reasons)."

This clear language construction is consistent with the policy of at least annually reviewing objective information and criteria with the ultimate goal of placing inmates in the lowest custody level corresponding with their case factors and public safety in conjunction with the goal of the work/training incentive program " 'to instill good work habits, teach marketable skills, improve [inmates'] reintegration into society and seek self-sufficiency for the prisons.' [Citation.]" (*Carter, supra,* 199 Cal.App.3d at p. 275; see DOM, § 62010.1.)

This interpretation also appears to have had some support in the DOCR operations manual before chapter 6, article 1, concerning the instructions for prison authorities completing the reclassification forms for inmates, was revised on July 26, 2004. In its 2000 operations manual regarding the application of favorable behavior points since the last review in those same provisions, the DOCR noted that although credits were given for each six-month period, two six-month periods shall be counted for an AR and when the inmate's status is interrupted during the period through no fault of his own, "that status shall be considered continuous." (DOM, § 61020.19.3.) With regard to average or above performance, the operations manual further noted that "[i]nmates will typically have average or above work grades and school grades. This item is intended to compare inmates in general and be comparable to granting credits under the work incentive program." (DOM, § 61020.19.3, boxes 52–53.) From these comments in its manual, it is gleaned that the inmate was to have the same work status and assignment for purposes of credits/points for favorable work behavior as for worktime credits, which in turn supports the interpretation that such status and assignment would continue for the entire review *period.* That period, if an AR, would be one year made up of two six-month periods that had been interrupted through no fault of the inmate.

Although we are mindful that worktime credits, which reduce an inmate's sentence, are different from favorable points/credits for average or above performance in that work, they are interrelated. (§§ 3044, 3375.4.) Both types of incentives to reward an inmate's work/school behavior or performance depend upon the inmate's status as assigned to a credit-qualifying work, school or program. Player's work-qualifying status for each of the six-month periods of his AR's in question in this case had been disrupted or changed to "unassigned" based on circumstances and DOCR conduct which was not within his control. Clearly under case law and the plain language of both the old and current regulations, the DOCR could not deny Player his worktime credits for those segments of time and properly granted him "S" time to cover each segment. (See §§ 3045.3, 3043.6, subd. (c)(2); *Carter, supra,* 199 Cal.App.3d at p. 276; *In re Reina* (1985) 171 Cal.App.3d 638, 644 [217 Cal.Rptr. 535] (*Reina*).)

Even though "S" time technically refers to excused work time for purposes of calculating credit off of a prisoner's sentence, we do not believe it is logical or fair to deny Player the favorable behavior points for each respective six-month period at issue in this case under this somewhat analogous situation where his credit-qualifying assignments were disrupted or changed due respectively to an adverse transfer which was subsequently vindicated by our ealier opinion in case No. D041462 and a nonadverse transfer.[9] To find otherwise would deprive Player of the favorable points he would have earned during those "continuous" periods if he had been left in the assignment status he was in before it was changed to unassigned by the actions of the DOCR.

Further, although it appears comments in supplements to its operations manual regarding changes in DOCR's policy and procedures of the inmate classification scoring system in July 2004,[10] support the DOCR's interpretation that an inmate must be in an assigned position at the beginning of any six-month review period to be able to earn favorable behavior points for average or above performance in work or a school program for that period, we do not believe such are reasonable. In light of the DOCR's own regulations, an inmate is entitled to an award of worktime credits in a number of situations even when the inmate does not actually work, i.e., institutional lockdown, inclement weather, out-to-court status, family emergency, absent supervisor. There is also the "catchall" provision, section 3045.3, subdivision (b)(22), authorizing case-by-case analysis upon which the court in *Carter* relied to find the petitioner there entitled to additional worktime credits because his inability to work was beyond his control for reasons analogous to those listed in the administrative rules. (*Carter, supra,* 199

---

[9] Documents in the superior court file regarding Player's habeas corpus petition filed before the current petition in this court suggest that the prison authorities in 2000 may have placed Player in administrative segregation and designated him as "involuntarily unassigned" based upon the same unsupported information regarding an enemy concern that had been in Player's C-file before we ordered such information removed in case No. D041462.

[10] The transmittal letter regarding the changes explains that when the work or school assignment is interrupted through no fault of the inmate, favorable points should only be considered for that six-month period and not beyond "unless the inmate again reports to a work incentive assignment on the first day of, or prior to, the next review period beginning date." (DOCR Transmittal Letter No. 04/01, DOM, § 61020.19.3, p. 9.) As an example the DOCR operations manual notes that "[a]n unassigned inmate who received an assignment from the inmate assignment office during a lockdown period, but has been unable to report to that assignment due to the lockdown, is not eligible for favorable behavior points for the Average or Above Performance category for that six-month review period. The inmate shall continue to earn Work Incentive Credit, but is not eligible to be awarded favorable behavior points if not participating in a program. [¶] Favorable points shall not be applied for Average or Above Performance in Work, School or Vocational Program to an inmate not assigned to a program. [¶] Note: An inmate earns Work Incentive Credit once assigned to a fulltime work, school, or vocational program. However, favorable behavior points are based on inmate performance in custody." (DOCR Transmittal Letter No. 04/01 (July 26, 2004 revision) DOM, § 61020.19.3, p. 9.)

Cal.App.3d at p. 276.) As the court in *Carter* noted, "there is nothing in the regulations requiring the inmate to have already participated in the work program before he may get 'S' time credits under the enumerated circumstances." (*Ibid.*) Although "S" time credits refer to participation in a work or school program, when such is recorded for an inmate, the DOCR policy is that such "shall be considered the same as time worked for purposes of credit earning." (DOM, § 53130.9.) Logically, it follows that if the so-called considered time is worked at the same assigned status as before the authorized time off, then the favorable points for performance for that corresponding time should be awarded unless other factors such as new disciplinary matters negate their award. Essentially, this would comport with the policy of the DOCR to liberally construe work performance in the absence of staff documentation of the inmate's performance. (DOCR Transmittal Letter No. 04/01 (July 26, 2004 revision) DOM, § 61020.19.3, p. 9.)

To deny such points/credits by adopting the DOCR's interpretation of the period to be considered continuous for a nonfault interrupted AR, is to create a perpetual "Catch-22" situation in those cases where an inmate is unassigned in the other six-month period of an AR due to the continuing effect of an interruption beyond the inmate's control. Such is the position in which Player is found in this case. The interruptions of his "credit-qualifying status and assignments" in each of the six-month periods in his respective AR's in question were due to either an error by the DOCR that was later rectified by the grant of habeas corpus relief in case No. D041462 or by a nonadverse transfer beyond his control. To grant Player favorable performance credits for one six-month period but deny them for the other six-month period of those respective AR's that were directly affected by such interruptions is unreasonable and unfair. Because we agree with the court in *Reina*, that the incentive for rehabilitation is enhanced "by the perception that fairness exists in the operation of the rehabilitation program" (*Reina, supra*, 171 Cal.App.3d at pp. 644–645), which includes the classification of inmates for housing them for work and school programs as well as for security needs (see DOM, § 62010.7.2), we conclude Player is entitled to relief.

We thus grant the relief Player asks for in his petition and order that the DOCR award Player two favorable behavior points for each of the three six-month periods in question for which Player has already received "S" time credit and that his case be reviewed by the appropriate classification committee to consider his appropriate reclassification score, custody designation, program and institution placement, as well as any changes of his privilege group.

## DISPOSITION

The relief requested in the petition is granted. The Department of Corrections and Rehabilitation is directed to award Player favorable behavior points for average or above performance in accordance with this opinion and to review Player's designation, program, placement and privileges in light of his new classification score.

Nares, J., and O'Rourke, J., concurred.