Filed 2/18/15  P. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E060023 |
| v. | (Super.Ct.No. CR57871) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| ANTHONY FEDERICO CRUZ, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of prohibition/mandate. Michele D. Levine, Judge.  Denied.

Paul E. Zellerbach, District Attorney, and Emily R. Hanks, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

1

Steven L. Harmon, Public Defender, and William A. Meronek, Deputy Public Defender, for Real Party in Interest.

In this petition for extraordinary relief the People challenge an order of the superior court declining to place real party Anthony Federico Cruz[1] on "community supervision" (Pen. Code, § 3451, subd. (a))[2] following his release from prison. I agree with the trial court's decision and will deny the petition.[3]

## STATEMENT OF FACTS

Real party in interest (Cruz) was convicted of petty theft with a prior (§ 666) in 1995 and also admitted having suffered two prior "strikes" within the meaning of former section 667, subdivisions (b)-(e), as then in effect. He was sentenced to an indeterminate term of 25 years to life.

In 2012 the electorate, by initiative measure (Proposition 36), amended section 667 so that many of those defendants who have two prior "strikes" but whose *current* conviction is not for a "serious or violent felony" are subject only to a doubled base term sentence (§ 667, subd. (e)(1)) rather than the minimum 25-to-life terms

---

[1] Please note that the Abstract of Judgment filed September 23, 2013, shows real party's name as Anthony "Frederico" Cruz. All current documents refer to him as Anthony "Federico" Cruz.

[2] All subsequent statutory references are to the Penal Code.

[3] This court initially issued the order to show cause rather than a summary denial to explain why the result in this case differs from that reached in a similar case in which this court issued a published opinion. Subsequently, however, the Supreme Court ordered that decision depublished, and it is not cited. (Cal. Rules of Court, rule 8.1115.)

2

reserved for more serious current violators. (§ 667, subd. (e)(2)(A)(ii).) At the same time, the electorate added section 1170.126 as a mechanism by which inmates sentenced as "third strikers" under the old law could seek to be resentenced under the new provisions, if they would have been subject only to the lesser term had they been sentenced under the new law and met specified other requirements. In December 2012 Cruz filed such a request, which the court granted on September 20, 2013. Cruz was resentenced to the upper term of three years for the section 666 offense, doubled to a total of six years.

This order is not in dispute.[4] Due to the nature of his current conviction, Cruz would normally have been subject upon release to a period of "community supervision" under section 3451, part of the "Postrelease Community Supervision Act of 2011" (the Act). That statute provides that except for more serious offenders, as described, inmates released from prison on or after October 1, 2011, are subject to a new program of community supervision for a period not to exceed three years. (§ 3451, subd. (a).) Serious offenders remain subject to the existing system of parole governed by sections 3000 *ff.* The trial court here declined to place Cruz under community supervision, although it felt that, given his long incarceration, he would benefit from such supervision.

---

[4] The court's records do not reflect that any notice of appeal was filed from the order.

3

Although the trial court did not place on the record the reasons for its refusal,[5] I infer that the basis for the decision was the fact that Cruz had served approximately 18 years in custody, far in excess of his new prison sentence.  Section 2900.5, subdivision (a), provides generally that all periods of time spent in confinement by a convicted defendant are to be "credited upon his or her term of imprisonment."  "Term of imprisonment" is then defined to include "any term of imprisonment, including any period of imprisonment prior to release on parole and any period of imprisonment and parole, prior to discharge . . . ."  Hence, if an inmate accrues excess credits stemming from actual confinement, the excess is applied to reduce the maximum statutory period of parole.  (See *In re Ballard* (1981) 115 Cal.App.3d 647, 649 (*Ballard*).)  The court therefore presumably applied Cruz's excess credits to wipe out any period of community supervision, which could not exceed three years.  (§ 3455, subd. (e).)

It cannot be disputed that community supervision and parole serve precisely the same purpose—to facilitate the successful reintegration into society of those released from prison, while protecting the public by active supervision of the former inmate. (§ 3000, subd. (a)(1) [parole]; 3450, subd. (b)(5) [community supervision].)  Indeed, the express purpose of the Act was simply to shift the responsibility for supervising certain

_____

[5]  It merely referred cryptically to "documentation from the Department of Corrections directing the court that I cannot do so."  This court asked the trial court to forward a copy of the documentation referred to, but the trial court indicated that it could not locate any such communication, believing that it may have been filed in connection with another case.

4

released inmates to local jurisdictions. Mandated conditions for community supervision mirror those typically imposed on parolees, such as warrantless searches, waiver of extradition, and weapons and travel restrictions. (§ 3453, subd. (h).) Both programs of supervision are limited to three years for most offenders. (§§ 3000, subd. (b)(2)(A); 3455, subd. (e).) Former inmates under both programs may be returned to custody for violating the conditions of release. (§§ 3057, subd. (a); 3455, subd. (a)(1).) Several statutes, indeed, apply equally to both sets of offenders and treat them as equivalent. (E.g., § 3015, subd. (d) [authorizing participation in a "reentry court" program by both groups].)

The People's challenge to the trial court's refusal to place Cruz under community supervision was based on the theory that such supervision is by statute mandatory, which is not disputed, to the extent that parole is also mandatory. The People also pointed out that section 2900.5, subdivision (a), as quoted above, does not include the term of community supervision as one which may be reduced by excess credits, although it does expressly include the period of parole.[6]

_____

[6] Section 2900.5 was amended in 2011 to include periods spent on home detention as credits, but was not amended to address the creation of the community supervision program. We have been presented with nothing to indicate one way or the other whether this omission was intentional—that is, that the Legislature consciously wished to exclude periods of community supervision from the "excess credits" rule—or whether the Legislature simply never thought about the issue.

Defendant Cruz in this case casts the problem in terms of a violation of the equal protection clause.  He asserts that he is similarly situated with those released from prison who are subject to parole, and that there is no rational basis for applying excess credits to a parole term but not a community supervision term.  I agree.

Cruz argues that the enactment of section 1170.126 created a new class of defendants/inmates in the "excess credits" situation—that is, "third strikers" who obtained resentencing after serving many years in prison but who would be subject to postrelease community supervision rather than parole because only those "third strikers" whose current incarceration is for a relatively minor felony can seek resentencing.  This proposed class is too narrow.[7]  While it is probably true that the resentencing provisions of section 1170.126 will substantially increase the number of former inmates with excess credits, "third strikers" are *not* a distinct group from those who have gained credits through correction of errors, or who have simply served more presentence time than the

---

[7]  It is hard to disagree with the trial court's view that a period of supervision and assistance would be of benefit to real party Cruz after his extended incarceration. Arguably a provision denying the application of "excess credits" to a community supervision claim would be logical for inmates who had served lengthy terms before being resentenced.  However, section 2900.5 does not create subclasses of "excess credits" inmates subject to community supervision, and I do not decide whether such subclasses could properly be created by the Legislature.  I also note that not all inmates sentenced as third strikers and later resentenced will have served terms substantially longer than that to which they are resentenced; this depends on the timing of the conviction as well as the sentence eventually imposed.  Thus, a "bright line" might well be difficult to draw.

length of the sentence they ultimately receive.[8]  It is from this perspective that I analyze the equal protection argument:  are parolees and those subject to community supervision similarly situated, and if so, may "excess credits" be applied to parole terms but not to the period to be served on community supervision?

I have pointed out above some of the obvious similarities between parole and community supervision both with respect to function and intent.  The People summarize the bases for distinguishing between those subject to parole and those eligible for community supervision (primarily the type of conviction offense) and note some of the distinctions between the two programs, e.g., that parolees, but not those subject to community supervision, may be returned to prison.[9]  These arguments are unpersuasive.

---

[8]  Acting upon a hint from our Supreme Court, and with the concurrence of the Attorney General, this court recently vacated a defendant's conviction for the substantive gang felony described in section 186.22, subdivision (a).  The defendant had acted alone, and in *People v. Rodriguez* (2012) 55 Cal.4th 1125, the Supreme Court held that the statute could only be violated if the defendant acted in association with at least one other gang member.  Hence, the defendant's conduct did not constitute a crime and the conviction had to be vacated.  (See *People v. Mutch* (1971) 4 Cal.3d 389.)  Given the uncertainty prior to *Rodriguez*, a considerable number of defendants convicted of violating section 186.22, subdivision (a), may eventually wind up with "excess credits" after successfully attacking the conviction.

[9]  As noted above, the latter group may also be returned to custody, but in city or county facilities.  Among the other distinctions cited is that while community supervision may be terminated early by the court (§ 3456, subd. (a)), "the court does not have the authority to terminate parole early."  This is a specious argument; although courts cannot terminate parole early, a parolee's good behavior for a specified period triggers automatic early termination of parole unless the Board of Parole Hearings determines that parole should be continued.  (See, e.g., § 3001, subd. (a)(1).)  Thus, early termination is available to both groups.

7

In my view all forms of postrelease supervision that subject inmates to substantially comparable restrictions, control, and potential re-incarceration are equivalent for analytical purposes and that persons subject to the types of postrelease supervision discussed are similarly situated. The next question is whether the distinction for which the People argue may be lawfully drawn.[10]

The Constitution[11] does not forbid uneven treatment of persons or groups. The essence of an equal protection claim is that two groups, similarly situated with respect to the law in question, are treated differently. (*Grossmont Union High School Dist. v. State Dept. of Education* (2008) 169 Cal.App.4th 869, 892.) While most classifications will be upheld if there is a "rational basis" for drawing distinctions, a law that interferes with a fundamental constitutional right or involves a suspect classification is subject to strict

---

[10] After the dissemination of our tentative opinion to the parties, but before oral argument, Division Six of the Second District decided *People v. Espinoza* (2014) 226 Cal.App.4th 635 and held that inmates subject to community supervision were not entitled to apply excess credits against that period. Although the discussion is in part framed in terms of "equal protection," the court's analysis focuses on the permissibility of distinguishing between inmates sentenced before the Act (and thus subject to parole) and those sentenced thereafter (and thus subject to community supervision). I have no quarrel with the court's view that the ex post facto clause does not bar drawing such a distinction. At oral argument the People agreed that *Espinoza* does not analyze the equal protection argument in the framework presented here, and disclaimed any intent to rely on that decision as persuasive in that respect. Therefore, there is no need to express any view on the correctness of the result in *Espinoza*.

[11] Fourteenth Amendment to the United States Constitution; Article I, section 7, subdivision (a) of the California Constitution.

scrutiny and must be justified by a compelling state interest. (*People v. Lynch* (2012) 209 Cal.App.4th 353, 358.)

Numerous cases uphold the prospective application of statutes reducing the punishment for an offense by applying the "rational basis" test and finding prospective application of the law to be justified. In such cases the courts must uphold legislation if any reasonably conceivable set of facts could supply justification for the distinctions. (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) However, other cases apply the "strict scrutiny" test to laws that result in different periods of custody for those in the same time frame. (See cases collected in *People v. Cruz* (2012) 207 Cal.App.4th 664, 676-679; cf. *People v. Turnage*, *supra* at p. 74.) In my view a distinction that frees one offender from postrelease supervision while imposing potentially onerous and invasive restrictions on the other does impact a fundamental right. However, under *either* standard the distinction affected here cannot withstand examination.

Here the People attempt to justify the distinction by arguing that parole is "more onerous" than community supervision, focusing on the potential return to state prison and the possibility that parole may "far exceed three years." But I have noted that persons subject to community supervision may also be returned to custody, and for the majority of parolees, the standard parole term is three years. I have also noted that parole *may* be terminated early, contrary to the People's assertion. Thus, the argument that the Legislature may have rationally considered that allowing parolees to apply their excess credits to the "more onerous" parole while refusing this remedy to those under

9

community supervision does not hold water. *Both* programs are currently designed to release inmates from formal supervision as soon as reasonably possible, depending on their behavior and consistent with public safety, and there is no statutory restriction on the conditions that may be imposed on those under community supervision—other than those which also apply to parole conditions.[12] The policy considerations applicable to the two groups are identical and offer no basis for unequal treatment.

Another consideration is that if there *were* a reason to distinguish between the two groups with respect to excess credits, the more logical distinction would be to afford a reduced or eliminated period of supervision to those released after relatively minor convictions. But compared to those subject to community supervision, parolees have in general suffered the *more* serious recent convictions, and therefore arguably are *more* in need of supervision. Yet under the People's approach, these parolees are entitled to apply excess credits to the parole term, while those subject to community supervision after less serious offenses are not.

---

[12] Section 3454, subdivision (a), allows the "supervising county agency" to impose conditions of supervision in addition to those required by section 3453, so long as these discretionary conditions are "reasonably related to the underlying offense . . . or to the offender's risk of recidivism, and the offender's criminal history." This is generally consistent with the requirement that conditions of parole are valid unless they relate to conduct not itself criminal, has no relationship to the crime of which the parolee was convicted, and requires or forbids conduct which is not reasonably related to future criminality. (See *People v. Lent* (1975) 15 Cal.3d 481, 486.)

10

The People's argument is also undercut by the fact that the benefits of section 1170.126 are not available to the most violent offenders[13] and inmates found by the court to "pose an unreasonable risk . . . to public safety" may not be resentenced. (§ 1170.126, subd. (f).)  That is, resentencing (and thus community supervision) is reserved for inmates deemed minimal risks for violent recidivism.  On the other hand, the only inmates currently subject to parole are serious or violent felons, those who have been sentenced as "third strikers," high risk sex offenders, and mentally ill offenders. (§ 3451, subd. (b).)

To summarize, the most recent conviction or convictions of all inmates subject to community supervision are relatively minor, and inmates resentenced under section 1170.126 have never been convicted of egregiously violent offenses; they have further been currently found not to present undue risk to the public.  By contrast, inmates subject to parole all fall into one or more categories of serious and obvious risk.  Yet the latter can use excess credits to reduce or wipe out parole supervision, while under the People's approach inmates subject to community supervision cannot so use

---

[13]  Pursuant to subdivision (e)(3) of section 1170.126 and its cross-reference to section 667, subdivision (e)(2)(C)(iv), inmates are ineligible if they have been convicted of violent sex offenses, specified child sex offenses, any homicide or solicitation to commit murder, assaults with a machine gun on a police officer or firefighter, possession of a weapon of mass destruction, or any other felony punishable by life imprisonment or death.

their excess credits.  Even under the "rational basis" test, the distinction drawn by the People is simply unreasonable.[14]

When a court determines, as we do, that a statutory classification violates the constitutional guarantee of equal protection of the laws, it has a choice of remedies.  It may either withdraw the benefits of a statute from the favored group, or extend the benefit to the excluded class, and may also invalidate a statute or expand its reach.  (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1207; *Burnham v. Public Employees' Retirement System* (2012) 208 Cal.App.4th 1576, 1588.)  In this case the choice is relatively simple.  In enacting subdivision (a) of section 2900.5, the Legislature clearly recognized that persons who have served time in excess of that to which they were eventually sentenced should receive credit for that time against postrelease periods of restriction and control.  I would extend that rule to those facing community supervision.  Hence, real party in interest Cruz was not subject to such supervision.

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER  
                                                            Acting P. J.

MILLER, J., Concurring.

---

[14] At oral argument the People suggested that inmates released to parole have the opportunity to participate in prerelease transitional programs not available to inmates such as petitioner whose release was not predictable so that parole might be less essential for their success after release.  There is no evidence in the record to this effect.

12

I concur in the denial of the writ, but conclude denial is appropriate for different reasons than those expressed by my colleague.

## PROCEDURAL HISTORY

At defendant's Proposition 36 resentencing hearing, the prosecutor requested the trial court order defendant released subject to post release community supervision (PRCS). The court responded, "I wish I could. . . . Unfortunately, I received documentation from the Department of Corrections directing the Court that I cannot do so. I think it's a shame."

The writ exhibits do not include the "documentation from the Department of Corrections." After the writ petition was filed at this court, the Public Defender's Office requested the Department of Corrections "documentation" from the trial court. The documentation was not produced. In December 2014, this court directed the trial court to hold a hearing in which it stated, on the record, the content of the "'documentation from the Department of Corrections directing the court'" that it could not impose PRCS.

The trial court held the required hearing. A minute order from the hearing reflects: "The court has been unable to locate the letter. The letter was from another case and not this specific case. The Court has no specific memory of what the letter said but does have a general understanding and memory that the letter set forth the legal position from the Department Of Corrections that the post release community supervision should not be imposed upon resentencing of a prop36 [*sic*] defendant."

## DISCUSSION

13

Given the current state of the record, I do not know the trial court's reason(s) for denying PRCS. It is possible the trial court denied PRCS due to defendant having excess credits. It is equally possible the trial court denied PRCS because it believed only the Department of Corrections has the authority to impose PRCS, i.e., a separation of powers issue. (See *People v. Tubbs* (2014) 230 Cal.App.4th 578, 583 [PRCS not imposed because the trial court believed "only the Secretary of the Department of Corrections and Rehabilitation . . . could decide whether a defendant was to be placed on PRCS after release from custody"].) The point being, it is unclear why the trial court denied the prosecutor's request for PRCS.

Since I do not know the trial court's reason(s) for denying PRCS, any discussion about the trial court's reasoning would be speculative and any opinion related to that speculation would be advisory. "[T]he ripeness requirement prevents courts from issuing purely advisory opinions, or considering a hypothetical state of facts in order to give general guidance rather than to resolve a specific legal dispute. [Citation.]" (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 998.) There are considerable problems associated with providing gratuitous constitutional decisions. (*People v. McKay* (2002) 27 Cal.4th 601, 627 [conc. opn. of Werdegar, J.].)

In the People's writ petition they write, "The [trial] court declined to order PRCS only because the court was informed by the Department of Corrections that it was illegal to place a defendant resentenced under [Penal Code] section 1170.126 with credits in excess of the confinement period on PRCS." The People provide no record citation to

14

support this assertion regarding the trial court's reasoning. In defendant's response, he raises an equal protection argument regarding credits.

The People's and defendant's arguments are based upon a hypothetical state of facts. There is nothing indicating the trial court denied PRCS due to an excess of credits. As a result, I do not believe this court should provide an advisory opinion regarding equal protection, credits, and PRCS. For this reason, I do not concur in either of my colleagues' reasoning regarding equal protection because, at this time, it is unclear if equal protection is a relevant issue in this case.

The fact that the People and defendant have seemingly agreed to discuss equal protection at this court does not render an opinion on the subject any less advisory since the discussion is based upon a hypothetical state of facts in which the trial court denied PRCS due to excess credits. (See *Rea v. Blue Shield of California* (2014) 226 Cal.App.4th 1209, 1229 [inserting an issue into appellate proceedings does not mean the issue is ripe for review].)

I analogize the current state of the record/exhibits to parties going into chambers without a court reporter and having an off-the-record discussion, which results in an inadequate record on a particular issue. In that situation, an appellate court could only speculate what may have occurred in that off-the-record discussion (see *People v. Deere* (1991) 53 Cal.3d 705, 721 ["[w]hether anything took place off the record . . . is purely a matter of speculation"]), which courts cannot do—courts may not speculate as to what

may have transpired off the record (see *People v. Gray* (2005) 37 Cal.4th 168, 230 [speculation cannot support reversal of a judgment]).

The current case, involving the "documentation from the Department of Corrections" has caused there to be an inadequate record, similar to when an off-the-record conversation takes place. There is no foundation in the record from which to infer the document concerned credits, separation of powers, or a possible third legal reason—the content of the documentation is unknown, and therefore any discussion involving the content would necessitate speculation.

"[A] petitioner seeking relief by way of mandamus bears the burden of presenting an adequate record to demonstrate the claimed error. [Citation.]" (*People v. Superior Court* (*Dorsey*) (1996) 50 Cal.App.4th 1216, 1222 [Fourth Dist., Div. Two].) In this case, the People are the petitioner. The People have failed to provide an adequate record to demonstrate error because they have not shown the equal protection issue is ripe in this case. Accordingly, I would deny the writ.

MILLER _____

J.

16

RICHLI, J.

I concur in part and, respectfully, dissent in part. I concur with the implicit conclusion of the lead opinion that the record is adequate and the issues are ripe. However, I dissent, in that I would hold that it is not an equal protection violation to require real party in interest Antonio Federico Cruz (Cruz) to serve the statutorily required period of postrelease community supervision.

I

PROCEDURAL BACKGROUND

In July 1995, Cruz pleaded guilty to petty theft with a prior (Pen. Code, § 666); he also admitted two "strike" priors (Pen. Code, §§ 667, subds. (b)-(i), 1170.12). Under the three strikes law as it then stood, he was sentenced to an indeterminate term of 25 years to life.

In November 2012, the voters passed Proposition 36. Proposition 36 amended the three strikes law so as to provide that (subject to exceptions not relevant here) a defendant with two strike priors can be sentenced to 25 years to life only if the current offense is also a strike; otherwise, such a defendant must be sentenced to double the base term. (Pen. Code, §§ 667, subds. (e)(1), (e)(2)(A), (e)(2)(C), 1170.12, subds. (c)(1), (c)(2)(A), (c)(2)(C).)

At the same time, Proposition 36 also enacted Penal Code section 1170.126, which allows some persons serving a sentence of 25 years to life under the old version of the

1

three strikes law who would not be subject to such a sentence under the new version of the three strikes law to petition for resentencing.

Thus, in December 2012, Cruz duly filed a petition for resentencing. In September 2013, the trial court granted the petition. Accordingly, it resentenced Cruz to six years (double the upper term of three years). Cruz had already been in prison for more than 18 years.[1] The trial court therefore ordered him released "forthwith."

The prosecutor then asked that Cruz be placed on post-release community supervision. (Pen. Code, § 3451.) The trial court responded: "I wish I could. . . . I believe it is just a tragedy . . . especially for inmates who have spent as long a period of time in custody as you have, Mr. Cruz, that it is of great assistance. . . . I see . . . post-release community conversation [*sic*] . . . as someone [*sic*] who could help you as you transition back into the community. Unfortunately, I received documentation from the Department of Corrections directing the Court that I cannot do so. I think it's a shame."

The People filed a petition for an extraordinary writ, arguing that post-release community supervision was mandatory.

Cruz opposed the petition. He argued that, because prisoners otherwise subject to parole who have over-served their parole period are entitled to unconditional release, requiring him to serve a period of post-release community supervision would violate equal protection.

---

[1] This does not even include Cruz's presentence custody and conduct credits, nor does it include any postsentence conduct credit to which he may be entitled.

We issued an order to show cause.**2**

II

NO EQUAL PROTECTION VIOLATION

A person serving a prison sentence is entitled to various credits against the length of the sentence. The time actually served in prison is treated as a "credit[]." (Pen. Code, §§ 2900, subd. (c), 2900.1.) The prisoner is also entitled to credit for time spent in presentence custody (Pen. Code, § 2900.5), for presentence good conduct (Pen. Code, § 4019), and for postsentence good conduct (Pen. Code, § 2933).

There are various ways in which a prisoner can over-serve his or her sentence. For example, an appeal or a habeas proceeding may result in a reduction of the total sentence after the prisoner has already served more time than the reduced sentence. Or an appeal or a habeas proceeding may result in an increase in the prisoner's presentence or postsentence credits that is greater than the time left to be served. (See *In re Carter* (1988) 199 Cal.App.3d 271, 273.) Or, by the date of sentencing, the prisoner may have accumulated presentence credits that exceed the sentence actually imposed. (See Pen. Code, § 1170, subd. (a)(3).) And there may be other ways. (See *In re Young* (2004) 32 Cal.4th 900, 909, fn. 5 [holding prisoner retroactively entitled to a "heroic act" reduction of his sentence after he had already been released on parole].)

---

**2**  By issuing the order to show cause, we determined that an appeal was not a plain, speedy, and adequate remedy. (See *Rockwell v. Superior Court* (1976) 18 Cal.3d 420, 427.) Time is of the essence because Cruz is currently released without any supervision whatsoever.

3

Until recently, all persons released from prison were placed on parole.  (Former Pen. Code, § 3000, subd. (b).)  However, under the Criminal Justice Realignment Act of 2011 (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1), operative October 1, 2011, only those deemed to be the most serious offenders remain subject to parole.  (Pen. Code, §§ 3000.08, subd. (a), 3451, subd. (b).)  All others must be placed on post-release community supervision.  (Pen. Code, § 3450 et seq.)

Post-release community supervision is similar to parole in many ways.  They both serve the same purpose — to reintegrate the offender into society, while protecting public safety by supervising the offender.  (Pen. Code, §§ 3000, subd. (a)(1), 3450, subd. (b)(5).)  Post-release community supervision entails conditions commonly imposed on parolees, such as obeying all laws, warrantless searches, and weapons and travel restrictions.  (Pen. Code, § 3453.)  A violation of these conditions can result in reincarceration.  (Pen. Code, §§ 3056, subd. (b), 3057, subd. (a), 3454, subds. (b), (c), 3455, subd. (a).)  Both programs are limited to three years in most instances.  (Pen. Code, § 3000, subd. (b)(2)(A), 3455, subd. (e).)  There are minor differences regarding the duration of the supervision and the consequences of a violation; however, most of the differences between the two relate to funding and administration.  (The Chief Justice Earl

Warren Institute on Law And Social Policy, Thinking Critically About Realignment in California (Feb. 2012) at p. 5.**3**)

By statute, if a prisoner who is subject to parole over-serves his or her sentence, the excess credits must be applied to shorten the parole period; indeed, if the excess credits exceed the entire parole period, the prisoner is entitled to be discharged unconditionally. (Pen. Code, §§ 1170, subd. (a)(3), 2900.5, subd. (a), (c); Cal. Code Regs., tit. 15, § 2345.)

There is no similar statute shortening post-release community supervision. Quite the contrary, as the People point out, Penal Code section 3451, subdivision (a) provides: "*Notwithstanding any other law* . . . , all persons released from prison on and after October 1, 2011, or, whose sentence has been deemed served pursuant to Section 2900.5 after serving a prison term for a felony *shall*, upon release from prison and for a period not exceeding three years immediately following release, be subject to community supervision . . . ." (Italics added.)

Cruz concedes that, statutorily, he is subject to post-release community supervision. He argues, however, that as a matter of equal protection, he is entitled to the same treatment as a prisoner subject to parole, and thus he is entitled to use his over-served time to wipe out his entire period of post-release community supervision.

---

**3** Available at <https://www.law.berkeley.edu/files/bccj/Thinking_Critically_3-14-2012.pdf>, as of February 11, 2015.

5

This appears to present a question of first impression. *People v. Espinoza* (2014) 226 Cal.App.4th 635 held that allowing prisoners sentenced *before October 1, 2011* to have time in custody credited against parole, while denying a prisoner resentenced *after October 1, 2011* (under Proposition 36) similar credits against post-release community supervision, does not violate equal protection. (*Id.* at p. 641.) However, it did not consider the somewhat different argument that Cruz is raising.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, "'[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner."' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."' [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 328.)

Here, Cruz himself has consistently defined the assertedly disfavored class as prisoners subject to post-release community supervision who have over-served their sentence as a result of being resentenced pursuant to Proposition 36. The assertedly

favored class consists of prisoners subject to parole who have over-served their sentence for any other reason.**4**  These classes differ in two significant respects.

First, parolees have served the entire sentence that was imposed on them, as required by law at the time their crimes were committed.  If they have over-served that sentence, they have done so due to a legal error that needs to be corrected.  By contrast, prisoners resentenced pursuant to Proposition 36 have not completed their third-strike sentences, nor have they been the victims of a legal error.  Rather, they have been granted early release as an act of grace.

In light of the purpose of the law, this distinction is substantial and meaningful. The lawmakers could reasonably require, as a quid pro quo, that Cruz's group go through the full period of post-release community supervision.  Basically, they get the rest of their lives back, in return for not more than three years of post-release community supervision.

---

**4**  The lead opinion states, "This proposed class is too narrow."  (Lead opn. at p. 6.)  It therefore redefines the classes at issue — seemingly as parolees with excess credits versus PRCS supervisees with excess credits.  (See lead opn. at pp. 6-7.)

As a result, the lead opinion analyzes a facial challenge, even though defendant has raised only an as applied challenge.  " ' . . . "A facial challenge to the constitutional validity of a statute . . . considers only the text of the measure itself, not its application to the particular circumstances of an individual.  [Citation.] . . ."  [Citation.]'  [Citation.]" (*Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 486 [Fourth Dist., Div. Two].)  Here, the relevant statutes do not expressly single out persons resentenced under Proposition 36.  Rather, defendant argues that they have a discriminatory impact when applied to such persons.

"[W]e do not address constitutional questions unless necessary.  [Citation.]" (*Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 129.)  By reframing the issue sua sponte, the lead opinion falls afoul of this rule.

As the maxim goes, "'[h]e who takes the benefit must bear the burden.' [Citation.]" (*People v. McKinney* (1979) 95 Cal.App.3d 712, 744.) If they could use their time lawfully served as a credit against their period of post-release community supervision, that would essentially be a *double* reduction of their sentences — a prison time reduction *and* a community supervision reduction.

Second (although related to the first point), prisoners become members of the favored class randomly, due to legal error or other happenstance. There will always be a trickle of inmates into this class, but there will never be a flood. Moreover, the amount by which these inmates have over-served their sentences will vary randomly; often it will be small. Those whose conduct credits have been incorrectly calculated, for example, will probably benefit by a matter of only weeks or months.

By contrast, Proposition 36 gave all third-strikers who meet its criteria just a two-year window to petition for resentencing (subject to extensions for good cause). (Pen. Code, § 1170.126, subd. (b).) Thus, if members of Cruz's class are excused from post-release community supervision, they will all be hitting the streets around the same time. Moreover, a crop of third-strikers who are resentenced as second-strikers are likely to have over-served their new sentences by hefty amounts. Cruz himself, for example, has over-served by more than *12 years*. This raises significantly heightened public safety concerns. To protect the public, the lawmakers could reasonably require that all resentenced third-strikers go through the full period of post-release community supervision.

Cruz complains that the law "arbitrarily treat[s] those who . . . have been sentenced [for] a less serious offense more harshly than those who have been sentenced [for] a more serious offense." (Fn. omitted.)  Admittedly, even after realignment, prisoners convicted of relatively serious crimes are still subject to parole (Pen. Code, §§ 3000.08, subd. (a), 3451, subd. (b)), whereas only prisoners convicted of relatively nonserious crimes are eligible for resentencing under Proposition 36.  (Pen. Code, § 1170.126, subds. (e)(1), (e)(2).)  However, Cruz's self-defined class is limited to prisoners who have over-served their sentence *as a result of being resentenced pursuant to Proposition 36*.  As I have discussed, this group is not similarly situated to prisoners who have over-served their sentences and who are subject to parole.  Cruz has never claimed that he was discriminated against as a member of the class of prisoners convicted of relatively non-serious crimes.  Thus, I have no occasion to discuss the propriety of this distinction.[5]

For the sake of completeness, I note that it is not entirely clear how a "similarly situated" analysis relates to classic three-tiered equal protection analysis.  Under the latter, "' . . . [d]istinctions in statutes that involve suspect classifications or touch upon fundamental interests are subject to strict scrutiny, and can be sustained only if they are necessary to achieve a compelling state interest.  Classifications based on gender are subject to an intermediate level of review.  But most legislation is tested only to

---

[5]    I likewise express no opinion as to whether denying any other class of prisoners credits against post-release community supervision violates equal protection.

determine if the challenged classification bears a rational relationship to a legitimate state purpose.' [Citation.]" (*In re Smith* (2008) 42 Cal.4th 1251, 1262-1263.)

The California Supreme Court has stated that, once it has been determined that two groups are not similarly situated, "an equal protection inquiry into the justification for any legislative distinction [is not] necessary. [Citations.]" (*People v. Barrett* (2012) 54 Cal.4th 1081, 1107.) This makes sense, because the similarly situated analysis *itself* already inquires into the justification for the legislative distinction. Saying that two groups are *not* similarly situated for purposes of the law is basically the same as saying that the distinction between the two groups *is* reasonably related to the purposes of the law. Thus, it has been observed that "'similarly situated' analysis is somewhat redundant of the 'fit' inquiry — for rational basis, whether the line that is drawn is reasonably related to a legitimate government interest, and for intermediate scrutiny, whether it is substantially related to an important government interest. 'Similarly situated' analysis underlies both of these inquiries and, as a formal matter, can be collapsed into each of them." (Shay, *Similarly Situated* (2011) 18 Geo. Mason L. Rev. 581, 616, fns. omitted.)

There is a lurking question as to whether a "similarly situated" analysis would be appropriate when the challenged distinction is subject to strict scrutiny. Interestingly, in *In re Marriage Cases* (2008) 43 Cal.4th 757, the Supreme Court held that strict scrutiny applied to the distinction between same-sex and opposite-sex couples under California's marriage laws. (*Id*. at pp. 783-784.) Three justices argued that same-sex and opposite-sex couples were not similarly situated. (*Id*. at pp. 873 [conc. & dis. opn. of Baxter, J.,

10

joined by Chin, J.], 881-882 [conc. & dis. opn. of Corrigan, J.].)  A majority of the Supreme Court rejected this argument; however, it also observed that, if accepted, it "would insulate the challenged marriage statutes from *any* meaningful equal protection review . . . ."  (*Id*. at pp. 831-832, fn. 54.)

Thus, if only out of an excess of caution, I note that Cruz's equal protection claim is subject to the rational basis test.  He claims that the challenged distinction is subject to strict scrutiny because it impacts the "fundamental interest in personal liberty," as well as the right to vote, the right to travel, the right to freedom of association, and the right to be free of unreasonable searches and seizures.  However, as our Supreme Court has noted, it could be argued that the strict scrutiny standard applies "whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes, because such statutes always implicate the right to 'personal liberty' of the affected individuals."  (*People v. Wilkinson* (2004) 33 Cal.4th 821, 837.)  Our high court nevertheless proceeded to reject the view that "' . . . the courts [must] subject all criminal classifications to strict scrutiny requiring the showing of a compelling state interest therefor.' [Citation.]"  (*Id*. at p. 838.)  It explained that this view "would 'intrude[] too heavily on the police power and the Legislature's prerogative to set criminal justice policy.' [Citations.]"  (*Ibid*.)  Rather, it cited with approval (*ibid*.) this court's opinion in *People v. Alvarez* (2001) 88 Cal.App.4th 1110, holding that "the rational basis standard applies" to our review of "an alleged sentencing disparity."  (*Id*. at p. 1116; see also *McGinnis v. Royster* (1973) 410 U.S. 263, 270 ["The determination of

11

an optimal time for parole eligibility elicited multiple legislative classifications and groupings, which . . . require only some rational basis to sustain them."].)

Cruz's equal protection claim fails to pass the rational basis test for the same reasons that it fails to pass a "similarly situated" analysis. As already discussed, the legislative distinction is rationally related to two differences between the two classes: (1) members of Cruz's class are being given shorter sentences as an act of grace, whereas parolees who have over-served their sentences were entitled to shorter sentences all along; and (2) members of Cruz's class are likely to be released around the same time, whereas parolees who have over-served their sentences are not likely to be released at all and, even if they are, will be released slowly over time.

In sum, then, I conclude that it does not violate equal protection to treat Cruz and his class differently from parolees for purposes of crediting their over-served time against their period of post-release community supervision or parole.

III

THE RECORD IS ADEQUATE

It goes without saying that "[a] writ petition must be accompanied by an adequate record . . . ." (*Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 96, fn. 2.) However, this is not a case in which the petitioner has failed to provide us with some crucial document filed in the case or failed to request a court reporter at some crucial hearing. The People have provided us with as complete a record as humanly possible.

Significantly, this is also not a case in which the trial court was required to provide a statement of reasons. (See Pen. Code, § 1170.126; see also Cal. Rules of Court, rules 4.406(b), 4.415(d).)[6] We review similar decisions routinely, with no particular difficulty. The governing principles are well-established: "An order is presumed correct; all intendments are indulged in to support it on matters as to which the record is silent, and error must be affirmatively shown. [Citation.]" (*Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 321.)

Here, the People have shown error by pointing out that post-release community supervision is statutorily mandatory. The question then becomes, are there any grounds — any grounds at all — on which the trial court's action may be sustained? "'"[A] ruling or decision, itself correct in law, will not be disturbed . . . merely because given for a wrong reason."'" [Citation.]" (*People v. Chism* (2014) 58 Cal.4th 1266, 1307, fn. 13.) The parties have been able to come up with only one candidate — Cruz's equal protection argument. If Cruz's argument is sound, the trial court's action must be sustained, regardless of the reasons on which it actually relied.

The concurring opinion has been able to come up with one more, namely that the Department of Corrections and Rehabilitation has sole authority to decide whether a defendant should be placed on post-release community supervision, citing *People v.*

---

[6]     If, on the other hand, the trial court did have a mandatory duty to provide a statement of reasons, then presumably the People would be entitled to a writ vacating the trial court's order and commanding it to state its reasons.

*Tubbs* (2014) 230 Cal.App.4th 578 (*Tubbs*).  *Tubbs*, however, rejected this argument (*id.* at pp. 586-587), and the parties evidently do not think it even worth mentioning.

Thus, the equal protection argument is ripe for our decision, whether the trial court relied on it or not.  Of course, it is conceivable that the trial court actually relied on some reasoning too subtle to have occurred to any of us.  Even if so, however, our opinion need not be read as inadvertently rejecting that argument.  "'It is axiomatic that cases are not authority for propositions not considered.'  [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 684.)

Hence, I conclude that the record is adequate and the equal protection issue is squarely presented.

RICHLI_____
J.

14